[No. C004716. Third Dist. June 26, 1990.]

CROCKER NATIONAL BANK, Plaintiff and Respondent, v.
ROBERT M. EMERALD, Defendant and Appellant.

COUNSEL

Robert M. Emerald, in pro. per., for Defendant and Appellant.

Frandzel & Share, Robert B. Kaplan and Joseph N. Demko for Plaintiff and Respondent.

OPINION

DeCRISTOFORO, J.—Defendant, Robert M. Emerald, proceeding in propria persona, appeals from a judgment granting plaintiff Crocker National Bank's motion for summary judgment. Crocker's motion for summary judgment stems from a collection action brought by Crocker against Emerald for nonpayment on a promissory note. Emerald appeals from the judgment of dismissal following the order granting summary judgment, contending triable issues of fact exist as to whether Crocker has complied with California Uniform Commercial Code section 9504 subdivision (3) which requires the sale of collateral to be conducted in a commercially reasonable manner. Emerald also argues Crocker is estopped from collecting the deficiency judgment by the doctrine of unclean hands, and contends the trial court abused its discretion in denying him leave to file a cross-complaint. Finally, Emerald requests this court to make findings of fact under Code of Civil Procedure section 909. We shall reverse the order granting summary judgment, decline to make findings of fact, and affirm the trial court's denial of leave to file a cross-complaint.

FACTUAL AND PROCEDURAL BACKGROUND

This dispute between Crocker and Emerald has stretched on for nine years. It began when Emerald, the owner of a logging business, signed a promissory note with Crocker in the principal sum of $430,962.30. The note was payable in 30 monthly installments of $14,365.41, with the unpaid balance due and payable on December 15, 1978. An agreement giving Crocker a security interest in 52 items of equipment owned by Emerald's logging business secured the payment obligation.

Emerald's business experienced financial difficulties caused by the 1975 recession in the logging industry. Emerald realized he would be unable to make the series of payments due on May 15, 1976, and monthly thereafter. He failed to make the installment payment due May 15, 1976. Pursuant to the terms of the promissory note, Crocker elected to declare the entire unpaid balance to be due after the May 15, 1976, default, and made demand

on Emerald for payment. In April 1976, with Crocker's consent, Emerald decided to sell some of the equipment securing the promissory note and to apply the proceeds to the balance due.

With Crocker's consent, Emerald sold 18 items of equipment, and the proceeds of the sale were credited to the balance due on the promissory note, reducing the balance to $128,966.86.

Crocker filed suit against Emerald to recover the balance due on the promissory note, plus collection charges, interest and attorney's fees. Emerald answered the complaint and filed a cross-complaint against Crocker alleging breach of fiduciary duty and violation of the Unruh Act. The trial court sustained Crocker's demurrer and granted Emerald leave to amend. Emerald amended his cross-complaint four times, each time the trial court sustained Crocker's demurrer, on the final occasion without leave to amend.

In March of 1984, Crocker filed a motion for summary judgment, which the trial court granted. The trial court also denied Emerald's motion for reconsideration. On appeal, we reversed in part the order denying Emerald's motion for reconsideration. (*Crocker National Bank* v. *Robert M. Emerald*, No. 3 Civ. 24158.) We found a triable issue of fact existed as to whether Crocker took possession of 10 items of collateral which were later sold, and, if so, whether Crocker sold these items in a reasonably commercial manner pursuant to California Uniform Commercial Code section 9504. We also determined a triable issue of fact existed as to whether three additional items of collateral sold at auction were disposed of "in good faith and in a commercially reasonably manner" within the meaning of section 9504.

In December of 1987, Crocker filed a second summary judgment motion, which forms the basis of this appeal. In its motion, Crocker attempted to comply with California Uniform Commercial Code section 9504 by adopting Emerald's own valuation of the 13 items of collateral left in issue by our earlier opinion. Crocker used the values Emerald had assigned to each piece of equipment in his declarations and deposition testimony, and offered to give Emerald "credit" and reduce his debt by these amounts. Therefore, according to Crocker, since Emerald had been credited with the amount he believed the equipment was worth, the question of whether the sale of the collateral was commercially reasonable became moot.

In response, Emerald filed a motion for leave to file a cross-complaint and an amended answer. The trial court granted Emerald's motion for leave to file an amended answer, but denied leave to file a cross-complaint.

Following oral argument, the court granted Crocker's motion for summary judgment. Following entry of judgment, Emerald filed a timely notice of appeal.

I. *Standard of Review*

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. The motion must stand self-sufficient and cannot succeed because the opposition is weak. A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial. [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. Counteraffidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203], citations omitted.)

■ " 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' " (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134]; citations omitted.) Although the affidavits and declarations of the nonmoving party are liberally construed, even if they contain conclusory terms, the party opposing the motion must submit competent evidence in opposition showing sufficient facts to substantiate its allegations. (*Cory* v. *Villa Properties* (1986) 180 Cal.App.3d 592, 601 [225 Cal.Rptr. 628].)

When conflicts appear in the papers submitted in support of and in opposition to the motion, we resolve those conflicts in favor of the nonmoving party. (*Gregorian* v. *National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 946 [220 Cal.Rptr. 302].) In addition, all reasonable inferences are considered in favor of the nonmoving party. (*Rubio* v. *Swiridoff* (1985) 165 Cal.App.3d 400, 403 [211 Cal.Rptr. 338].)

■ The summary judgment procedure is designed to test whether any material triable issues of fact exist, but not to resolve disputed factual issues.

(*Fireman's Fund Ins. Co.* v. *Fibreboard Corp.* (1986) 182 Cal.App.3d 462, 465 [227 Cal.Rptr. 203].) ■ An order of summary judgment will not be reversed in the absence of a clear showing of abuse of discretion. (*Fireman's Fund, supra,* 182 Cal.App.3d at p. 466.)

## II. *Commercially Reasonable Sale of Collateral*

At the core of this controversy is California Uniform Commercial Code section 9504. Section 9504 provides that, in the event of default by the debtor, the secured party may liquidate the security and apply the proceeds to the unpaid balance of the debt. If there remains a deficiency, the debtor is liable for the balance. Subdivision 3 of section 9504 imposes upon the secured party the duty to conduct the sale of the collateral in a commercially reasonable manner, and to provide timely notice of the sale to the debtor.[1]

The court in *Security Pacific National Bank* v. *Geernaert* (1988) 199 Cal.App.3d 1425, 1431 [245 Cal.Rptr. 712] explained the rationale underlying the requirements of section 9504: "Commercially reasonable sales are presumed to be in good faith and at the greatest possible market rate. Unless collateral is sold by a creditor in a commercially reasonable manner, debtors run the risk of collusive tactics by secured parties or agents. Unscrupulous creditors could easily sell (or buy) collateral well below market value, obtain a deficiency judgment against the debtor for the difference, resell the collateral and obtain a substantial profit over the amount of the original debt."

This court in *Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999 [104 Cal.Rptr. 315, 59 A.L.R.3d 389] considered section 9504 and concluded the secured party's "right to a deficiency judgment depends on compliance with the statutory requirements concerning dispositions and notice. [¶] The rule and requirement[s] are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." (*Id.* at p. 1009, italics omitted.)

---

[1] California Uniform Commercial Code section 9504 (hereafter section 9504) states, in pertinent part: "(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . . [¶] (3) a sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, . . . and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his address, . . . a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made."

Crocker, in its motion for summary judgment, attempted to comply with the requirements of section 9504. For the purposes of its summary judgment motion, Crocker assumed, without conceding, that it had taken possession of the remaining items of collateral, and had sold them. Crocker's motion credited Emerald with what he claimed was the fair market value of the items, and sought judgment in an amount equal to the difference between Emerald's valuation of the remaining collateral and the balance due on Emerald's note. This computation decreased the unpaid principal balance of the promissory note.

Crocker claimed that by crediting Emerald with his own estimate of the fair market value of the remaining collateral, Crocker eliminated any damages Emerald might have suffered by any arguably commercially unreasonable sale. Further, according to Crocker, by crediting Emerald, Crocker served the underlying purpose of the commercially reasonable sale requirement of section 9504, subdivision (3); the protection of a debtor from the harm resulting from a creditor's unreasonable disposition of collateral.

In granting Crocker's motion for summary judgment the trial court stated: "The Motion for Summary Judgment is *granted*. [¶] California Commercial Code Section 9504 is designed to insure that the collateral bring a fair market price. [¶] The bank is only seeking the amount of the deficiency which would exist if the alleged fair market value, as admitted by Emerald, were received upon sale of the collateral. [¶] Under the circumstances, where the underlying purpose of Commercial Code Section 9504 is [moot], the issue of the commercially reasonableness of the sale of the remaining items of collateral is moot. [¶] We do not go to trial on moot issues; we go to trial on contested issues only."

On appeal, Emerald contends the trial court erred in granting Crocker's motion for summary judgment because there was a material question of fact as to whether Crocker complied with section 9504, subdivision (3) and conducted the sale of collateral in a commercially reasonable manner. Emerald does not challenge Crocker's compliance with the notice requirements under section 9504, subdivision (3), only the commercial reasonableness of the sale.

Crocker responds with three basic arguments: (1) a secured creditor is *only* barred from obtaining a deficiency judgment in the event it fails to give a debtor notice of sale of collateral; (2) the failure of a secured creditor to conduct a commercially reasonable sale on one out of multiple items of collateral does *not* bar a deficiency judgment; and (3) because Crocker is willing to credit Emerald with his own assessment of the fair market value

of the collateral, there was no prejudice to Emerald, and Crocker was not required to show it acted in good faith.

We disagree with each of these arguments and, because a question of material fact regarding the commercial reasonableness of the sale exists, we will reverse the summary judgment.

■ Contrary to Crocker's first assertion, a secured creditor is barred from obtaining a deficiency judgment in the event it fails to give a debtor notice of the sale of collateral *or* fails to conduct the sale in a commercially reasonable manner. *Western Decor & Furnishings Industries, Inc.* v. *Bank of America* (1979) 91 Cal.App.3d 293 [154 Cal.Rptr. 287], is a case where the creditor gave the debtor notice of a public sale of the collateral, but not of a subsequent private sale, which sale was also found not conducted in a commercially reasonable manner. After first noting "The California Uniform Commercial Code is silent with regard to the secured party's rights to collect a deficiency judgment in the event the secured party fails to comply with the provisions of section 9504, subdivision (3)" (*id.* at p. 306) the court, upon an extensive review of the authorities, finds them in conflict. "One line of reasoning holds that failure of the secured party to comply with the notice requirement or the requirement to conduct the sale in a commercially reasonable manner bars the secured party from recovering a deficiency judgment. . . [¶] The other line of authority holds that the secured party's failure to comply with the provisions of section 9504, subdivision (3) does not result in a forfeiture of the right to recover a deficiency judgment." (*Id.* at pp. 306-307.) The court then observes: "A trend has been established in California to bar a deficiency judgment if the secured party fails to comply with the requirements of section 9504, subdivision (3)." (*Id.* at p. 307.) Finally, the court concludes: "In the present case the bank failed to give notice to Western Decor of the second sale *or to conduct the sale in a commercially reasonable manner.* In the light of the California cases, cited above, we see no reason to depart from the trend already established in California barring a deficiency judgment if the secured party fails to comply with the requirements of California Uniform Commercial Code section 9504, subdivision (3)." (*Id.* at p. 308, italics added.)

■ Apropos of Crocker's second argument, Crocker admits no California authority exists for its claim that failure to conduct a reasonably commercial sale of only some of the debtor's multiple collateral does not bar a deficiency judgment. Crocker cites only a Florida Supreme Court decision: *Weiner* v. *American Petrofina Marketing, Inc.* (Fla. 1986) 482 So.2d 1362. Since this appeal concerns *13* items of collateral out of an original *52* items, we hold that this failure to sell "some" of the collateral in a commercially reasonable manner does bar a deficiency judgment.

Finally, we find no merit in Crocker's claim that by seeking judgment on the difference between the unpaid balance on Emerald's note and Emerald's valuation of the 13 items of collateral, there is no prejudice to Emerald, and that the question of commercial reasonableness becomes moot. In effect, Crocker contends section 9504 does not bar a deficiency judgment, if the creditor substantially complies with the requirement of a commercially reasonable sale by crediting the debtor with the debtor's valuation of the collateral in question. We disagree. "The right to a deficiency judgment is conditional and depends on strict compliance with the statutory requirements." (*Backes* v. *Village Corner, Inc.* (1987) 197 Cal.App.3d 209, 216 [242 Cal.Rptr. 716].)

Crocker further contends that by crediting Emerald with the fair market value *he* claimed for the remaining items of collateral, Crocker "eliminated any damages that Emerald might have suffered by any arguably commercially unreasonable disposition which the Bank may have carried out with respect to the 13 items of collateral."

Again, we disagree. Crocker focuses only on the value of collateral as a measure of Emerald's damages, and ignores the greater damage: allowing the creditor who has not complied with the requirements of section 9504 to collect a deficiency judgment. If the secured creditor fails to meet the requirement of a commercially reasonable sale, it cannot collect a deficiency judgment of the balance owed by the creditor. (*Buran Equipment Co.* v. *H & C Investment Co.* (1983) 142 Cal.App.3d 338, 341 [190 Cal.Rptr. 878].) This deficiency judgment is precisely what Crocker seeks to collect.

We find that a secured creditor cannot by unilateral action after nine years of litigation, suddenly accept the debtor's earlier estimate of the fair market value of the collateral, and thereby deny the debtor the *opportunity* to challenge the commercial reasonableness of the sale. ■ "Whether a sale is conducted in a commercially reasonable manner is a question of fact and the answer depends on all of the circumstances existing at the time of the sale." (*Clark Equipment Co.* v. *Mastelotto, Inc.* (1978) 87 Cal.App.3d 88, 96 [150 Cal.Rptr. 797].) Therefore, we reverse the trial court's order granting summary judgment.[2]

III. *Denial of Leave to File Cross-complaint*

■ Emerald claims the trial court erred in denying him leave to file a cross-complaint. He argues his proposed cross-complaint is a compulsory

---

[2] Because we find triable issues of fact exist as to whether Crocker complied with section 9504, subdivision (3), we do not address Emerald's argument that the doctrine of unclean hands precluded the trial court from granting Crocker's summary judgment.

cross-complaint under Code of Civil Procedure section 426.30. As a compulsory cross-complaint, Emerald asserts his complaint is governed by Code of Civil Procedure section 426.50, which makes permission to assert an unpleaded cause of action mandatory.

Code of Civil Procedure section 426.30, subdivision (a), which defines compulsory cross-complaints, states: "Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." "Related cause of action" is defined in Code of Civil Procedure section 426.10, subdivision (c) as "a cause of action which arises out of the same transaction, occurrence or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint."

Code of Civil Procedure section 426.50 authorizes relief from excusable failure to plead: "A party who fails to plead a cause of action subject to the requirements of this article, whether through oversight, inadvertence, mistake, neglect, or other cause, may apply to the court for leave to amend his pleading, or to file a cross-complaint, to assert such cause at any time during the course of the action. The court, after notice to the adverse party, *shall grant,* upon such terms as may be just to the parties, leave to amend the pleading, or to file the cross-complaint, to assert such cause if the party who failed to plead the cause acted in good faith. This subdivision shall be liberally construed to avoid forfeiture of causes of action." (Italics added.)

Emerald's proposed cross-complaint alleges (1) gross negligence; (2) fraud, deceit, and menace; and (3) intentional infliction of emotional distress.

Emerald bases his claim of gross negligence on Crocker's alleged failure to dispose of the 13 remaining items of collateral in a commercially reasonable manner pursuant to section 9504. Emerald attempted to cross-complain based on this same alleged conduct in five previous cross-complaints, to each of which Crocker successfully demurred. Thus, Emerald has not "failed" to plead a related cause of action in the past, as required by Code of Civil Procedure section 426.50. Instead, he has attempted to plead a cause of action, based on Crocker's alleged misconduct, on five separate occasions. His final effort was met with a demurrer which the trial court sustained without leave to amend.

Moreover, Emerald's proposed second and third causes of action for fraud, deceit, menace and intentional infliction of emotional distress, are

based on Crocker's actions which allegedly took place in February 1982. Emerald contends Crocker engaged in "a campaign of fraud, deceit and unfair practices against cross-complainant, calculated and conceived to usurp" his property beginning in February 1982. These actions, Emerald claims, caused him severe emotional distress.

To be considered a compulsory cross-complaint, a related cause of action must have existed at the time of the service of Emerald's answer to Crocker's complaint. (Code Civ. Proc., § 426.30, subd. (a).) Emerald filed his answer in August 1980, and the second and third causes of action are based on actions which allegedly took place in February 1982. Therefore, Emerald's second and third causes of action are not compulsory cross-complaints, and are not governed by Code of Civil Procedure section 426.50.

Instead, Emerald's proposed cross-complaint is a permissive cross-complaint, governed by Code of Civil Procedure section 428.50, subdivision (c) which states: "A party shall obtain leave of court to file any cross-complaint except one filed within the time specified in subdivision (a) or (b). Leave may be granted in the interest of justice at any time during the course of the action." Permission to file a permissive cross-complaint is solely within the trial court's discretion. (*Orient Handel* v. *United States Fid. and Guar. Co.* (1987) 192 Cal.App.3d 684, 701 [237 Cal.Rptr. 667].)

We find the trial court did not abuse its discretion in refusing Emerald leave to file the cross-complaint. Emerald sought leave to file his cross-complaint seven years after the onset of litigation, and five years after a demurrer was sustained to Emerald's fifth amended cross-complaint without leave to amend. Moreover, Emerald's motion for leave to file a cross-complaint was filed only five months before the trial date.

Emerald provides no explanation for his delay in seeking the court's permission to file his proposed cross-complaint. Emerald knew of the facts upon which he based his first cause of action for gross negligence since at least August 1980, when he filed his first proposed cross-complaint. In addition, the facts upon which he based his second and third causes of action were known to him since 1986. Emerald's declaration in support of his motion for reconsideration, following the trial court's order granting Crocker's motion for extension of a writ of attachment, contains the same allegations as his proposed cross-complaint.

Given Emerald's lack of explanation concerning his failure to seek leave of the court between 1986 and 1988, we find the trial court acted within its discretion in denying Emerald leave to file his cross-complaint.

## IV. *Findings of Fact*

Finally, Emerald requests us to make findings of fact and enter judgment in his favor pursuant to Code of Civil Procedure section 909.

Code of Civil Procedure section 909 states: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

Our power to invoke this section is to be exercised sparingly, and ordinarily only to affirm the lower court decision and terminate the litigation, and in very rare cases where the record or new evidence compels reversal. (*Monsan Homes, Inc.* v. *Pogrebneak* (1989) 210 Cal.App.3d 826, 830 [258 Cal.Rptr. 676].)

We decline to invoke Code of Civil Procedure section 909, since section 909 applies only where trial by jury has been waived or is not a matter of right. In the present case Emerald requested a jury trial, making section 909 inapplicable. Moreover, invoking section 909 would improperly prevent Crocker from presenting evidence on various defenses to Emerald claims. Crocker would be precluded from arguing that it did not take possession of the disputed items of collateral, or from presenting evidence to show any sale of collateral was commercially reasonable. Therefore, we will not invoke section 909.

### DISPOSITION

We reverse the order granting summary judgment and judgment thereon, and remand for further proceedings consistent with this opinion. We affirm

the trial court's denial of Emerald's motion for leave to file a cross-complaint. Emerald shall recover costs on appeal.

Carr, Acting P. J., and Marler, J., concurred.