Filed 3/22/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF FINANCE, | C085761 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2016-80002485CU-WM-GDS) |
| v. | |
| CITY OF MERCED et al., | |
| Defendants and Appellants; | |
| LISA CARDELLA-PRESTO, as Auditor-Controller, etc. | |
| Real Party in Interest. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge. Affirmed as modified.

Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, R. Matthew Wise, Deputy Attorney General, for Plaintiff and Respondent.

Best, Best & Krieger, Iris P. Yang, T. Brent Hawkins for Defendants and Appellants.

1

This is an unusual "Great Dissolution" case (see *City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488, 491) that turns on basic civil procedure questions.[1] The City of Merced (City) participated in the normal due diligence review (DDR) process to review what, if any, monies had to be disgorged when its former RDA was statutorily dissolved. The City did not initiate a judicial challenge to the amounts the Department of Finance (DOF) ultimately found had to be repaid and the reasons therefor. The DOF soon filed what amounted to a collection action, seeking mandamus compelling the City to transfer certain money to the RDA's successor agency, and compelling that agency to transfer money to the relevant county's auditor-controller. The City answered with a general denial and boilerplate affirmative defenses. The City then tried to challenge the merits of the DDR determinations, and later filed a belated cross-petition seeking to challenge the merits.

The trial court struck the cross-complaint, declined to consider the City's challenges to the merits of the disputed amounts, and ordered a writ compelling the monetary transfers. The City timely filed this appeal.

We hold the trial court properly declined to consider the merits of the dispute, but we will direct the trial court to modify the judgment to clarify a particular monetary amount and affirm the judgment as modified.

---

[1] "Given the many RDA [Redevelopment Agency] cases this court has decided, due to the designation of Sacramento County as the venue for such disputes [citations], its basic implementing mechanisms are well understood by the parties." (*City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 573, fn. omitted (*Grass Valley*).) Thus, we decline to elaborate on history and nomenclature except as necessary.

## BACKGROUND

The City had an RDA; the relevant successor entity is the Merced Designated Local Authority (Authority), consisting of three gubernatorial appointees vested with the powers and duties of a typical successor agency. (See Health & Safety Code, § 34173, subd. (d)(3)(A).)[2]

During the DDR process, as is typical, DOF reviewed various transactions to determine which, if any, were "enforceable obligations," a term of art in dissolution cases. (See, e.g., *Grass Valley*, *supra*, 17 Cal.App.5th at pp. 574-575.) The Authority was late in submitting the two required reviews to DOF. DOF made determinations regarding the funds and initially determined some $13 million was owed. After a meet-and-confer process and additional correspondence, DOF agreed some of that money had already been paid, and on August 25, 2016, sent a letter stating $10,020,210.83 was owed and providing 60 days to pay the money or agree to a payment plan. The money was not paid, no payment plan was reached, and as the trial court phrased it: "Further, Respondents did not seek judicial review of DOF's DDR determinations."

On November 15, 2016, DOF filed the instant petition for traditional mandamus against the City and the Authority, naming the Merced County Auditor-Controller (Auditor) as the real party in interest. It alleged the Authority filed its DDRs in 2015-- one for a housing fund and one for everything else--long past the statutory deadlines. (Cf. § 34179.6, subd. (a) [each was due in 2012].) "Respondents have not contested DOF's DDR determinations but have neither made the required transfers of funds nor reached an agreement" on a payment plan. DOF alleged the City and the Authority had a present statutory duty to turn over the money. (See §§ 34179.6, 34179.9.)

---

[2] Further undesignated statutory references are to the Health and Safety Code.

3

The Authority and City each answered with a general denial and boilerplate affirmative defenses.[3]

DOF's memorandum in support of the petition described the process leading to its final DDR determinations, and emphasized that no challenges to its final determinations had been made. It claimed a ministerial duty on the part of the City and the Authority to comply with those findings, relying on statutes giving it the power to sue to enforce the dissolution statutes (§ 34177, subd. (a)(2)) and providing a five-day period for the successor agency to comply once DOF has given notification of its determinations. (See § 34179.6, subd. (f).)

The City's opposition partly claimed documents purportedly damaged by flooding as well as its own decision not to become the successor agency for its former RDA were factors outside its control, causing the delays and impairing its ability to contest some claims. The City argued, *on the merits*, that a particular housing project was an enforceable obligation ($5,688,500) and that certain bond proceeds ($491,815 transferred by the former RDA to the Authority and $280,359 of "pre-2011 bond proceeds that were used" pre-dissolution) could not be disbursed to taxing entities.[4]

---

[3] Real party Auditor advised this court that she has no direct interest in the appeal and filed no brief. The Authority's position was that it never held the money at issue and it, too, should have been deemed a real party rather than a respondent. DOF disagreed, as did the trial court, on the theory that once the City paid over the money it owed, the Authority would have a legal duty to distribute it in accordance with the dissolution statutes.

[4] Procedurally, the City claimed mandamus was unavailable because DOF had an adequate remedy at law, purportedly a "full trial" on the merits of DOF's claims. In *City of Bellflower v Cohen* (2016) 245 Cal.App.4th 438, 453 and footnote 10 we explained that " 'injunctive or other appropriate relief' " could be sought by statute. (See § 34177, subd. (a)(2).) Traditional mandamus was therefore available to compel compliance with ministerial duties defined by statute, as DOF contended.

DOF's reply repeated there had been no legal challenge to the approximately $10 million determined to be owed via the DDR process. DOF objected that this lawsuit was not an appropriate vehicle for the City to seek review of the DDR determinations, because this petition merely sought transfer of the money pursuant to statutes so providing. DOF conceded $491,815 in bond proceeds had already been transferred to the Authority and therefore DOF "no longer seeks the return" of that money, but pointed out that its DDR review had already disallowed the City's claim regarding the $280,359 in previously spent bond money, consisting "of unencumbered bond proceeds that must be transferred" under the dissolution statutes. DOF pointed out the City was not contesting about $3.5 million of the total determined due by the DDR review.

Confusingly, DOF also defended the merits of its determinations.

On June 15, 2017, the trial court issued a tentative ruling for DOF, partly finding that the City had never properly challenged the DDR determinations.

At the first of four hearings, held on June 16, 2017, the City claimed that based on ongoing negotiations with DOF, as well as other issues, the City had not had time to file a petition to challenge the DDR results, and sought a continuance so it could file a petition. When the court pointed out that seven months had passed during *this* litigation (filed November 15, 2016), the City replied that it had been busy preparing the record and so forth, and thought its issues could be consolidated "for the Court's consideration." DOF replied that the original submissions had been late and it was too late to challenge the DDR determinations.

Under questioning by the court, the City explicitly conceded it was not challenging that it owed approximately $3.5 million. The court proposed continuing the matter "contingent" on the City paying the undisputed amount, so the parties could continue to discuss the still-disputed amount. The court characterized the case as a "transfer" petition rather than a "substantive" case.

5

The trial court continued the case for the parties to "look into the issue and if they want to file anything, they can then file it. And it would . . . probably result in a related case determination if the case would then come back here and we can put the cases together. [¶] I'm going to make that contingent on the transfer of the 3 and a half million dollars. I don't see any reason why that shouldn't be transferred, unless the parties can identify something. It seems to me that there is no dispute with regard to that amount." The court indicated that if the parties could not agree on a payment plan for the undisputed amount, the court would order the City to pay it in full.

The parties agreed on an order continuing the matter to August 4, 2017, so that they could meet and confer about how the City would pay the agreed amount, either by transfer or a payment schedule.

After no payment plan was reached, DOF sought an order for immediate payment of the full amount agreed. The record contains a proposed order by which the court would have ordered the City to pay the "undisputed portion" ($3,559,536.83) to the Authority within five business days, without impairing the ability of DOF to agree to a payment plan with the City.

On August 1, 2017--without seeking leave of the court--the City filed a cross-petition purporting to challenge the DDR findings on the merits. The City did not explain why those findings had not been challenged before. The petition sought traditional (rather than administrative) mandamus, and alleged DOF's DDR determinations were "arbitrary, capricious, an abuse of discretion and unsupported by law or the facts," DOF had a duty "to recognize" that $5,968,859 "was properly expended on enforceable obligations," $491,815.28 of bond proceeds were already held by the Authority, and DOF was mistaken about the $280,359 in pre-dissolution bond proceeds, thereby reducing the City's liability to the approximate $3.5 million it had conceded. The petition does not allege that the City had ever filed any other challenge to DOF's final DDR findings.

6

At the second hearing, on August 4, 2017, the City argued it could not agree to a payment plan on even the agreed amount until it knew its *total* liability. The City claimed that because it had filed the cross-petition, everything would have to be decided first, otherwise there would be a violation of the one final judgment rule.[5] DOF pointed out that at the prior hearing the court "was indicating that filing a Cross-Petition would be contingent on the payment of the 3.5 million not in dispute. [¶] THE COURT: I recall that." The court expressed a concern that the City appeared to be engaging in dilatory tactics. The City, conceding the $3.5 million amount not disputed, insisted it could not agree to any payment plan without knowing its total eventual liability. The court agreed to continue the matter again, stating the parties had to resolve the undisputed amount, which they were supposed to have done "a month and a half ago."

By the third hearing (August 25, 2017), no payment plan had been agreed upon and DOF asked the court to order the money transferred, as provided by statute. DOF also suggested that if any later challenge on the merits succeeded "funds can be reversed at that point." When DOF reminded the court that the continuance for a cross-petition had been contingent on the City's payment of the undisputed funds, the court concurred, and also pointed out that the City had not sought leave to file the cross-complaint. When the City claimed it assumed the court would grant the leave to amend, the court replied, "I never saw the request," and if the City had filed a request for leave to amend DOF would have had a due process right to oppose the request; further, "there is also a statutory issue." The court ordered one more continuance to resolve the issues,

---

[5] As DOF pointed out in the trial court, the one final judgment rule is an *appellate* rule under which "a judgment that fails to dispose of all the causes of action pending between the parties is generally not appealable." (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1100.) The City never explained how an interim order that it pay what it agreed it owed would violate this rule or impair the trial court's ability to proceed regarding any amounts still in dispute.

7

emphasizing that the approximately $3.5 million amount "hasn't been in dispute for months." The court suggested that it could sign an order regarding that money, regardless of other issues.

On August 29, 2017, DOF answered the cross-petition, in part arguing it was untimely and had not been filed with leave of the court.

On August 30, 2017, the City filed an objection, contending in part that it should not have to pay even the undisputed amount, on the theory that this would violate the one final judgment rule because the cross-petition contested that *other* money was owed. It reiterated the earlier excuses for its purported inability to timely challenge DOF's claims.

At the fourth and final hearing on September 1, 2017, the trial court summarized some of the history, including that the undisputed amount had not yet been paid and the City had filed a cross-petition without leave of court, but that in any event the court was not going to assume the burden of working out a payment schedule for the parties. Instead the court proposed striking the cross-petition and affirming the original tentative decision (issued June 15, before the multiple continuances). When the City explained it was still not contesting the $3.5 million, the court replied, "Well, but you are in a different manner" by insisting on a convenient payment schedule and resolution of other issues. The court also pointed out that the City had "essentially disregarded the condition" the court had set for the filing of a cross-petition, *viz.*, paying the undisputed money.

After further discussion the court stated: "I have pleadings that have been filed inappropriately, and I strike them. I have a tentative ruling which I issued three months ago, and I affirm it. And if you [i.e., the City] wish to basically file additional pleadings in a new case you can do so." The court later reiterated that the cross-petition had not been properly accompanied by notice and a request for leave to amend, "It was simply filed." The Authority argued that the City could appeal from the judgment issuing the writ and then file an attack (a new petition) on the disputed portion, dragging the

8

Authority into an appeal and a second lawsuit. The court thought that might be procedurally correct; and "[a]t least that is clean. All of the parties know what procedures they are following, that is simple."

Although there had been talk of a December hearing on the cross-petition regarding the disputed amounts, the court struck the cross-petition and answer thereto and affirmed its original (June 15, 2017) tentative ruling.

The writ (incorporating two prior minute orders, the June 15, 2017 tentative ruling and September 1, 2017 minute order affirming the same and striking the cross-petition and answer thereto) commands the City to "transfer the entirety of the $10,020,210.83 [DDR] balance, minus any unencumbered bond proceeds already transferred," to the Authority, and for the Authority, "upon receipt" of such funds from the City, to transfer such funds to the Auditor.

The City timely filed this appeal from the judgment issuing the writ.

## DISCUSSSION

## I

### *The Pleaded Issues*

The City contends the *correctness* of DOF's DDR determinations about enforceable obligations were placed at issue in this case by its answer, thus the trial court should have addressed the merits of its claims. We disagree. The City's answer generally denied the allegations of DOF's petition and raised boilerplate defenses. But DOF's petition did not put in issue the validity of its findings. And because the City's answer did not allege that it had challenged DOF's final determinations, neither did the answer.

First, the City's general denial put in issue only whether DOF *made* the findings it made, not the adequacy of the findings themselves. Contrary to the City's view, the possibility that DOF made mistakes does not change the fact that DOF's findings were

9

made (and went unchallenged).  The City does not dispute that the dissolution statutes set forth a mechanism to compel compliance with DOF's findings.

Further, as we have explained in a different case:

"Under general rules of civil procedure, an answer must contain '[t]he general or specific denial of the material allegations of the complaint controverted by the defendant' and '[a] statement of any new matter constituting a defense.' [Citation.]  'The phrase "new matter" refers to something relied on by a defendant which is not put in issue by the plaintiff.  [Citation.]  Thus, where matters are not responsive to essential allegations of the complaint, they must be raised in the answer as "new matter." '  [Citation.]

"Such 'new matter; is also known as 'an affirmative defense.'  [Citation.]  Affirmative defenses must not be pled as 'terse legal conclusions,' but 'rather . . . as facts "averred as carefully and with as much detail as the facts which constitute the cause of action and are alleged in the complaint." '  [Citation.]  'A party who fails to plead affirmative defenses waives them.'  [Citation.]"  (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 812-813.)

But none of the City's (or the Authority's) pleaded affirmative defenses challenged the fact that DOF had found specific amounts were due after the DDR process.[6]  Nor, in the moving and opposing papers on DOF's petition, did the City ever dispute *what* DOF found during the DDR review, instead the City tried to dispute *the correctness* of those findings, an issue neither raised by DOF's petition nor by the answers.  The trial court repeatedly pointed this out to the City's counsel, that is, that DOF's findings had never been judicially challenged.  The court also characterized the

---

[6] The affirmative defenses, some evidently taken from a different lawsuit and therefore not entirely sensible, were:  (1) the City was a separate entity from the Authority and not responsible for liabilities of its former RDA; (2) lack of standing; (3) waiver; (4) laches (referencing a *different* city); (5) unclean hands; (6) failure to do equity; (7) interference with the City's lawful exercise of its discretion; (8) the City acted in good faith and did not abuse its discretion; (9) "the City's actions were justified pursuant to its proper powers;" and (10) failure to join indispensable parties.  An eleventh pleaded affirmative defense purported to reserve the right to raise other affirmative defenses later.  But the City never moved to amend its answer.

10

action as a "transfer" action (effectively, a collection action) by DOF, pursuant to the statutes on which the petition rests. As the court stated at the last hearing, it was the City that "wished to essentially interject different issues"--what the City called a "merits hearing"--into the case, long after the court issued its tentative ruling in favor of DOF.

As we have said in the context of summary judgment proceedings, the pleadings outline the perimeter of materiality, that is, they delimit the scope of the issues that are pertinent to resolution of the case. (See *Couch v. San Juan Unified School Dist*. (1995) 33 Cal.App.4th 1491, 1499; *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381-382.) The pleadings in this case, properly construed, did not challenge the validity of the DDR findings. Therefore, the trial court properly declined to reach them.

II

*Striking the Cross-Petition*

The City contends the trial court should not have stricken its cross-petition. We find the court acted well within its discretion for multiple reasons.

If a party does not file a cross-complaint against its opponent "before or at the same time as the answer" (Code Civ. Proc., § 428.50, subd. (a)), that party "shall obtain leave of court" to file one (*id*., subd. (c)). (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1168, pp. 599-601.) The City neither filed its cross-petition timely nor asked for leave to file it, in violation of these rules, as well as in blatant violation of the trial court's precondition that the City arrange to pay the undisputed amount owed. The court struck the cross-complaint for these reasons.

A court's refusal of leave to file a belated cross-complaint is reviewed for an abuse of discretion. (See *Crocker Nat. Bank v. Emerald* (1990) 221 Cal.App.3d 852, 864; *City of Sacramento v. Superior Court* (1962) 205 Cal.App.2d 398, 401.) Given that the City did not even *seek* leave to file the cross-complaint (far less comply with the preconditions set by the trial court), the court quite properly struck it. (See *Loney v. Superior Court*

11

(1984) 160 Cal.App.3d 719, 724 ["the cross-complaint of petitioners was properly stricken because leave of court was not obtained prior to its being filed"].)

The City's claim that the trial court "invited" the filing, which the City thought was unnecessary because its answer sufficiently put into issue the relevant questions, is unpersuasive. First, the court suggested any challenge to the merits was conditional on payment of the undisputed $3.5 million or agreement on a payment plan therefor, which did not occur. Second, the court never suggested that the City could file a cross-petition without following required procedures, which the court pointed out both violated the relevant statute and deprived DOF of the opportunity to be heard on the question of leave to file. Nor did the court *prevent* the City from filing a request for leave, as the City suggests; it was the City that failed to follow appropriate procedures.

Accordingly, the trial court did not err in striking the cross-petition.

III

*Validity of the DDR Determinations*

The City claims we should review the merits of the disputed findings on appeal, because purely legal issues are presented and the relevant documents are in the record. DOF does not agree, but prophylactically defends the DDR findings in the event we choose to review the merits.

We reject the City's claim that we should review the disputed issues on appeal. The outcome of a DDR process may be challenged by a mandamus action, resolution of which may then be appealed. As we have explained, the pleadings in this case do not properly raise any issues about the correctness of the DDR determinations. Further, in other RDA cases we have rebuffed invitations to adjudicate similar claims in the first instance. (See *Grass Valley*, *supra*, 17 Cal.App.5th at p. 582 & fn. 9; *City of Pasadena v. Cohen* (2014) 228 Cal.App.4th 1461, 1467-1468.) We see no reason to depart from our role as a reviewing court in this case.

12

IV

*Clarifying the Judgment (and Writ)*

The parties agree that the amount to be transferred should not include approximately half a million dollars in bond proceeds ($491,815).  The judgment is not *inconsistent* with this view because it directs the issuance of a writ stating the total amount due (from the City to the Authority, and thence from the Authority to the Auditor) with the caveat that it is "minus any unencumbered bond proceeds," and the writ also contains this caveat.

The City suggests the judgment should state the dollar amount of the bond proceeds.  DOF contends the relevant figure is undisputed and readily determined by reference to the record.

We shall direct the trial court to recall the writ and modify the judgment to issue a new writ specifying the exact dollar amount that the City and the Authority must transfer. This will eliminate any future claims of uncertainty.

## DISPOSITION

The trial court is directed to recall the writ and modify the judgment so that it commands issuance of a writ consistent with this opinion. As modified, the judgment is affirmed. The City of Merced shall pay the Department of Finance's costs of this appeal. (See Cal. Rules of Court, rule 8.278(a)(3).)



      /s/
Duarte, J.

We concur:

    /s/
Raye, P. J.

    /s/
Robie, J.

14