Filed 8/17/20  PHL Associates, Inc. v. Superior Court CA3
Opinion following rehearing

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| PHL ASSOCIATES, INC., | C088437 |
| Petitioner, | (Super. Ct. No. 06CV72352) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| THE SUPERIOR COURT OF YOLO COUNTY, | |
| Respondent; | |
| DALE WALLIS, | |
| Real Party in Interest. | |

THE COURT:

In response to the petition for rehearing filed by real party in interest Dale Wallis, the court modifies its opinion filed in this matter on July 16, 2020 as follows:

1.      On page 25 of the opinion, the paragraph that begins "Wallis contends PHL's argument . . ." is modified, and additional paragraphs are added following that paragraph, as follows:

Wallis contends PHL's argument is at odds with PHL's opposition to her motion in the liability trial to amend her complaint to allege a claim of misappropriation under CUTSA. Wallis did not challenge on appeal the trial court's denial of her motion or its later dismissal of her cross-complaint raising a claim under CUTSA. Those decisions are now final.

At oral argument, Wallis contended that two recent California opinions supported her argument. Those cases, *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798 (*Quigley*) and *Department of Finance v. City of Merced* (2019) 33 Cal.App.5th 286 (*City of Merced*), are distinguishable. In *Quigley*, an injured firefighter sued for damages under the Government Claims Act (Gov. Code, § 900 et seq.). The defendant agencies asserted a statutory immunity at trial which they had not pleaded in their answers. The lower courts held that the immunity was jurisdictional and could be raised at any time, but the California Supreme Court reversed. It held that the immunity did not go to the trial court's fundamental jurisdiction. Rather, it "shield[ed] particular actors or activities from otherwise applicable liability for tortious conduct. . . . [It] provides a justification or excuse from liability that would otherwise exist . . . ." (*Quigley, supra*, 7 Cal.5th at p. 809.) As a general rule, such a matter had to be pleaded as an affirmative defense. (*Ibid.*)

Unlike the statutory immunity at issue in *Quigley*, CUTSA does not just shield a defendant from liability that would otherwise exist. It prohibits a plaintiff from bringing any action at law or equity for trade secret misappropriation except as CUTSA provides. A cause of action that falls within the scope of CUTSA but is not brought under CUTSA fails to state a cognizable claim—it does not exist—and is subject to dismissal at any time. (Code Civ. Proc., § 430.80, subd. (a).)

The second case Wallis raises, *City of Merced*, is similarly distinguishable. There, the Department of Finance determined the city was required to transfer funds to the state as part of the dissolution of the city's redevelopment agency. The city did not timely

2

challenge the agency's findings, and it also did not transfer the money. The agency sought a writ of mandate to compel the city to pay. The city answered with a general denial, but it later opposed the petition by challenging the merits of the agency's determinations. It also filed a cross-petition without the trial court's approval to raise the same arguments. The trial court struck the cross-petition and awarded the writ. (*City of Merced, supra*, 33 Cal.App.5th at pp. 289-293.)

On appeal, the city claimed its general denial to the writ petition placed at issue the merits of the agency's determinations. A panel of this court disagreed. Not only did the general denial not place the claim at issue, but the city was required to allege the claim as an affirmative defense. An affirmative defense is " 'new matter' " relied upon by the defendant that is not responsive to the complaint's essential allegations. (*City of Merced, supra*, 33 Cal.App.5th at p. 294.) A failure to plead new matter as an affirmative defense waives the defense. (*Ibid*.) The city's claims were outside the petition's allegations and, having not been pleaded as an affirmative defense, were forfeited. (*Id.* at pp. 294-295.)

Unlike the new matter the city failed to plead as an affirmative defense in *City of Merced*, PHL's motion to dismiss for failure to state a claim responds to the complaint's allegations. Claiming that the plaintiff's cause of action cannot be stated as a matter of law directly responds to the action's allegations and does not rely on facts not alleged in the complaint to excuse a defendant from potential liability.


2. The text beginning with and including the paragraph on page 26 that begins "Wallis argued, and the jury . . .", and continuing through and including the paragraph on page 27 that begins "Wallis claims the trial court found . . ." is replaced with the following text:

Wallis argued, and the jury and the trial court found that PHL acquired the antigen due to Wallis's reliance on PHL's misrepresentation of her shareholder status. The jury

3

also found that PHL knowingly made a false representation and induced Wallis to rely on it, which she did. These findings establish that PHL had reason to know that it acquired the antigen by misrepresentation. Because PHL was the one who made the misrepresentation, it had reason to know that the antigen was acquired by improper means. These facts are the same nucleus of facts which would support a claim of trade secret misappropriation under CUTSA.

Wallis contends CUTSA did not supersede her equitable claims. She raises several reasons. She argues the equitable claims are not based on misappropriation. Rather, they assert Wallis allowed PHL to use the antigen in exchange for compensation as a shareholder, a factual scenario she claims is distinct from the facts that would support a misappropriation claim. This scenario, however, is not what the jury and trial court found. The court found that Wallis "relinquished" the antigen to PHL, not just licensed PHL to use it. The court also found that Wallis relinquished the antigen "in reliance" on PHL's false promise to make her a shareholder. Because PHL committed the fraud, it had reason to know that Wallis gave it the antigen in reliance on the fraud. Wallis's claims for equitable relief are based on the same nucleus of facts that would support a claim for misappropriation due to misrepresentation.

Wallis asserts the jury's findings foreclose a misappropriation claim. She contends misappropriation would have required PHL to commit an intentional act related to the antigen, but the jury found that PHL did not make a misrepresentation or false promise related to the antigen. As we have tried to make clear in this opinion, the misrepresentation did not have to "relate" to the antigen for PHL to be held liable. The scope of liability is based on the extent Wallis actually and reasonably relied on the misrepresentation and whether PHL had reason to know that it had acquired the antigen by its fraud. If PHL acquired the antigen by falsely and knowingly inducing Wallis to believe she was a shareholder, then it had reason to know it had acquired the antigen by improper means—which is misappropriation under CUTSA.

4

Wallis claims the trial court found that her equitable claims were not based on misappropriation. She notes the court stated she had no claim for misappropriation "because she unilaterally relinquished the antigen, *albeit in reliance on the promise of a stake in the company*." (Italics added.) She argues her claims for equitable relief were based on her reliance, not on PHL's intent to take the antigen by improper means, a showing she claims misappropriation requires. She and the trial court cannot have it both ways. If she relinquished the antigen due to her reliance on PHL's knowingly false promise, as the jury and trial court said she did, then PHL acquired the antigen with reason to know it had done so by its misrepresentation, and that act constitutes misappropriation under CUTSA.

These modifications do not affect the judgment. The petition for rehearing is denied.

BY THE COURT:

_____

HULL, Acting P.J.

_____

ROBIE, J.

_____

MAURO, J.

5

Filed 7/16/20 PHL Associates, Inc. v. Superior Court CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| PHL ASSOCIATES, INC., | C088437 |
| Petitioner, | (Super. Ct. No. 06CV72352) |
| v. | |
| THE SUPERIOR COURT OF YOLO COUNTY, | |
| Respondent; | |
| DALE WALLIS, | |
| Real Party in Interest. | |

With this petition for writ relief, we again address the dispute between real party in interest Dale Wallis and her former employer, petitioner PHL Associates, Inc. (PHL),

6

over Wallis's disclosure to, and sale by, PHL of an antigen Wallis developed for use in an animal vaccine. This iteration of the dispute arrives here following a retrial of Wallis's claims for equitable relief. In the bifurcated retrial, the trial court found that PHL was unjustly enriched by acquiring the antigen from Wallis by misrepresenting to her that she was a shareholder in the company.

Before incurring extensive discovery to prepare for the next trial on damages, PHL petitioned this court for relief. It contends the trial court's ruling violates the law of the case and, alternatively, that Wallis's equitable claims are superseded by the California Uniform Trade Secrets Act (Civ. Code, § 3426 et seq. (CUTSA)) and the statute of limitations bars Wallis from now bringing a claim under that law.

We grant the petition. Although Wallis's equitable claims are not barred by the law of the case, they are superseded by CUTSA, and by her not timely pleading a cause of action under CUTSA she is prevented from recovering any equitable relief.

## FACTS AND PROCEEDINGS

1.  *Development and sale of the antigen*

In 1988, while employed by PHL, Wallis developed an antigen, known as the J-5 TC antigen, for a vaccine for bovine mastitis. Although she developed the antigen within the scope of her employment, the jury found that she and PHL agreed she would own the antigen.

In 1989, Wallis discussed producing the vaccine with the PHL board of directors, but she felt they were reneging on an earlier promise to make her a shareholder. She considered taking the antigen to another company, but PHL gave her a raise and the opportunity to purchase 20 shares of PHL stock for $1,000 a share. Wallis paid $15,000 to PHL for 15 shares and $5,000 to the individual shareholders for five shares. She was given a vote in board meetings. PHL began using the antigen to manufacture vaccine for the market. Wallis received shareholder bonuses through 1990 and part of 1991.

7

In 1991, PHL negotiated to sell the vaccine to Upjohn. During negotiations, it terminated Wallis's employment. She refused an offer to buy back her shares because she believed she was entitled to one-sixth of the Upjohn deal. The other shareholders voted to remove her from the board of directors.

In January 1992, PHL finalized the sale of the vaccine to Upjohn for $2.5 million. PHL agreed not to compete with Upjohn for 10 years, and Upjohn agreed that PHL would be the exclusive producer and supplier of the antigen in the United States.

In March 1992, PHL's attorney notified Wallis in writing that she was not a PHL shareholder because she had purchased only an option to become a shareholder after five years of employment. The attorney enclosed checks to refund the purchase price of the shares plus interest. Wallis rejected the characterization of the transaction and refused to cash the checks.

Meanwhile, Wallis and her former husband started a company to develop and market its own J-5 antigen, and they tried to persuade Upjohn to purchase the vaccine from them. In 1993, Upjohn sued them for infringement, and they counterclaimed. The federal court granted summary judgment in favor of Upjohn on the counterclaim, and the parties settled. As part of the settlement, Wallis agreed that Upjohn owned the rights to the vaccine.

2.    *Complaint, cross-complaint, and bifurcated trial*

Wallis filed this action against PHL and its shareholders on June 22, 1994. In her fifth amended complaint, she alleged causes of action for fraud, conversion, conspiracy, unjust enrichment, constructive fraud, and constructive trust. PHL filed a cross-complaint. The trial court, Yolo County Superior Court Judge Stephen L. Mock, bifurcated trial on the complaint and cross-complaint, and it stayed discovery on the cross-complaint until after trial on the complaint.

8

Twice, once during trial in 2000 and once after trial in 2001, Wallis attempted to add a cause of action for misappropriation of trade secrets under CUTSA. PHL opposed both attempts. The trial court denied Wallis's requests. The court denied Wallis's motion to amend the complaint during trial because of the prejudice PHL would incur at that late stage. CUTSA would necessitate additional discovery on a different standard of damages which would further delay trial. It also could allow Wallis to recover attorney fees if she established liability with bad faith, and PHL had not been notified of that risk by any of Wallis's complaints.

After trial, Wallis filed a cross-complaint alleging misappropriation of trade secrets under CUTSA. The trial court sustained PHL's demurrer to the cross-complaint without leave to amend. The action was barred by CUTSA's three-year statute of limitations, and the relation-back doctrine did not apply. Wallis did not challenge on appeal either the denial of her motion to add a cause of action under CUTSA in 2000 or the court's 2001 ruling on the demurrer to her cross-complaint.

In June 2000, the jury returned special verdicts on the fifth amended complaint and found PHL liable for fraud and conversion related to Wallis's money. It found that Wallis invented the antigen within the scope of her employment at PHL, but she and PHL agreed that she would own the antigen.

As to fraud, the jury found:

• PHL did not make a false promise or false representation to Wallis related to the antigen.

• PHL knowingly made a false representation of material fact to Wallis related to her money to induce her to rely on it. Wallis relied on the misrepresentation unaware it was false and that PHL did not intend to perform, and she was justified in relying on the misrepresentation. The parties occasionally refer to this fraud as the share fraud.

As to conversion, the jury found:

• PHL did not deliberately interfere with the antigen.

9

• PHL deliberately and unjustifiably interfered with Wallis's $15,000.

The jury assessed against PHL over $1.9 million in compensatory damages and $500,000 in punitive damages. The jury also assessed damages against the individual shareholders, but they are not party to the writ petition before us.

After the jury trial was completed, the trial court heard argument on the equitable causes of action. In December 2000, it found there was unjust enrichment. It stated equitable relief was warranted because PHL took the antigen without paying any compensation to Wallis due to a "mistake of fact." The court imposed a constructive trust against royalties PHL received for the antigen after it sold it and for the noncompetition agreement it signed with Upjohn in an amount exceeding $1.4 million, including prejudgment interest. The court also lifted the stay on the cross-complaint proceedings.

PHL filed a written request for a statement of decision, but the court denied it as untimely.

In July 2002, Wallis disqualified Judge Mock under Code of Civil Procedure section 170.6 from hearing PHL's cross-complaint. Approximately six years later, in April 2008, the case was assigned to Judge David De Alba of the Sacramento County Superior Court.

In April 2010, 10 years after trial, the parties settled PHL's cross-complaint. Wallis agreed to pay PHL slightly more than $1.8 million, and PHL dismissed its action.

Wallis elected to recover on her fraud cause of action instead of conversion, and Judge De Alba entered judgment on Wallis's complaint. As later amended, the judgment against PHL awarded Wallis $1,944,997 in damages on the jury's fraud verdict, $500,000 in punitive damages, and $671,262 on the equitable claims. The judgment also awarded prejudgment interest.

10

3.      *Appeal*

Both PHL and Wallis appealed.  (*Wallis v. PHL Associates, Inc.* (2013) 220 Cal.App. 4th 814.)  (We grant PHL's request to take judicial notice of its opening brief in that appeal.  (Evid. Code, §§ 452, subd. (d); 453.))  Among other claims, PHL contended the special verdicts were inconsistent.  They did not support the damages award of $1.9 million because the jury found PHL committed fraud related to Wallis's money, not the antigen.  PHL contended the maximum damages for fraud related to Wallis's money equaled the $15,000 she paid to PHL for shares in the corporation. Wallis disagreed, arguing evidence supported the damages award because PHL obtained the antigen due to its false representations about her status as a shareholder.

In an unpublished portion of the opinion, we held Wallis's argument in support of the damage award did not reflect the correct standard of damages.  The correct standard was the out-of-pocket standard, and although the jury had been properly instructed on that standard, there was no evidence Wallis had spent more than $15,000 out of her pocket due to the fraud related to her money.  We also stated Wallis could not recover fraud damages for disclosing the antigen based on PHL's false promise of becoming a shareholder where the jury found there was no misrepresentation or false promise related to the antigen.  Our statement on this issue is provided in full and discussed in section I.A. of the Discussion below.

We modified the judgment.  Applying the out-of-pocket standard of damages, we reduced the award of fraud damages against PHL to $15,000, the amount Wallis paid PHL for the purported shares in the company.  Because of the reduction in the compensatory damages award, we also reduced the award of punitive damages to $150,000.

As for equitable relief, we concluded the trial court erred when it refused PHL's request for a statement of decision as untimely.  We also concluded that because Judge

11

Mock had been disqualified, the only remedy for this error was to remand for a new trial on the equitable causes of action.

### 4. *Retrial of equitable claims*

Following remand, the Sacramento County Superior Court returned the case to the Yolo County Superior Court. Judge Daniel P. Maguire was assigned for all purposes. Initially, the court bifurcated the equity trial into liability and damages phases.

After taking evidence but prior to issuing its statement of decision, the trial court requested supplemental briefing. It asked the parties to address what sort of intellectual property the antigen was and, if it was a trade secret, whether Wallis abandoned her ownership of it when she disclosed it to PHL. In their supplemental briefs, both parties contended the antigen was a trade secret. PHL argued that Wallis abandoned her rights to the trade secret when she disclosed it to PHL without a nondisclosure or licensing agreement.

The trial court released a tentative statement of decision. It stated the antigen was a trade secret, and Wallis was entitled to equitable recovery because she unilaterally disclosed the antigen to PHL in reliance on PHL's false promise to make her a shareholder.

Objecting to the tentative decision, PHL argued that if the antigen was a trade secret, Wallis's equitable claims were displaced by CUTSA. PHL contended CUTSA provided the exclusive civil remedy for claims based on misappropriation of trade secrets and confidential information, and it superseded equitable claims for unjust enrichment.

The trial court ordered additional briefing on whether CUTSA preempted Wallis's equitable claims. The court stated this issue had not been fully briefed, but it did not fault either party as the potential relevance of CUTSA preemption likely came to light with the court's tentative statement of decision.

12

After this additional round of briefing, the trial court issued its final statement of decision. It found that PHL was unjustly enriched by gaining access to the antigen through its fraud related to Wallis's money. The court found that "Wallis *unilaterally relinquished* the antigen to PHL, in reliance on its collateral assurance that she would be made an owner of the company. While the Court of Appeal has found that this relinquishment cannot support legal fraud damages for PHL's use and sale of the antigen, this court finds that it presents an appropriate case for equitable relief, as PHL has been unjustly enriched by its false promise to make Wallis an owner." (Original italics.) We describe the trial court's decision in more detail in section I.A. below.

The trial court did not address the issue of whether CUTSA displaced or superseded equitable remedies for misappropriation of trade secrets. Although the court found the antigen was a trade secret, it ruled that PHL forfeited its argument under CUTSA by not alleging it as an affirmative defense in its answer some 20 years earlier. Because Wallis's complaint did not allege misappropriation of trade secrets or that the antigen was a trade secret, PHL's objection based on CUTSA was new matter and was required to be alleged in the answer as an affirmative defense.

5.     *Petition for writ relief*

PHL filed this petition for writ of mandate, prohibition, and/or other appropriate relief, and we issued an order to show cause. PHL contends the trial court violated the law of the case, granted equitable relief inconsistent with the jury's findings, and denied PHL its right to a jury trial on the issue of fraud by finding Wallis was entitled to equitable damages for disclosing the antigen to PHL in reliance on PHL's false promise to make her a shareholder. PHL also contends the trial court erred when it determined PHL had forfeited its defense that CUTSA displaced Wallis's equitable claims. The defense showed that Wallis could not state a cause of action for equitable relief, and the failure to state a cause of action can be raised at any time.

13

PHL prays for a peremptory writ of mandate directing the trial court to vacate its statement of decision and to enter a new statement finding that (1) equitable relief based on Wallis's loss of the antigen due to PHL's share fraud is barred by the law of the case, and (2) any claim for equitable relief based on Wallis's disclosure of the antigen to PHL and PHL's acquisition and use of the antigen is displaced by CUTSA and that this defense was not forfeited.

In her return, Wallis contends the trial court's decision is consistent with the jury's findings and our opinion. She claims that neither we nor the jury determined whether she gave PHL access to the antigen in reliance on the false representation that she was a shareholder. We also did not address whether PHL had been unjustly enriched by its use of the antigen or the basis for that enrichment.

Wallis further contends the trial court did not err when it determined PHL had forfeited a defense based on CUTSA. She claims CUTSA is an affirmative defense that is forfeited if not pleaded. Moreover, she asserts the trial court ruled that PHL did not misappropriate the antigen because the jury in the liability trial found that PHL did not make a false promise or misrepresentation regarding the antigen; thus, CUTSA would not displace her equitable claims.

Wallis asks us to deny PHL's requested relief or, alternatively, remand to the trial court for further proceedings. She argues that if we find error, we must remand the matter to allow the trial court to consider other grounds of equitable relief which the court did not address and to determine, if necessary, whether her claims are based on facts other than those that would support trade secret misappropriation subject to CUTSA.

We granted PHL's motion to stay trial court proceedings on damages, including discovery, pending our resolution of this petition.

14

DISCUSSION

I

*Law of the Case*

PHL contends the trial court violated the law of the case when it awarded equitable relief based on an argument we rejected in the earlier appeal. PHL claims the trial court's finding that PHL fraudulently induced Wallis to disclose the antigen by falsely promising to make her a shareholder directly opposes our statement that the jury's findings prevented Wallis from recovering on that theory. PHL contends the trial court was bound by the jury's findings and our opinion on this point. We disagree.

A.    *Background*

In the earlier appeal, PHL contended the jury's special verdicts were inconsistent because the jury found fraud related only to Wallis's status as a shareholder, yet it awarded damages far in excess of what Wallis paid to be a shareholder. We agreed and concluded Wallis was limited to recovering the out-of-pocket damages she incurred due to PHL's fraudulent promise to make her a shareholder. In making this holding, we may seem to have rejected Wallis's argument that the false shareholder promise induced her to disclose the antigen and supported the trial court's damage award. We quote from our opinion at length:

"The question is whether the [jury's] fraud findings support the amount of damages when viewed in light of the pleadings, jury instructions, and evidence. We conclude that they do not.

"Wallis alleged in her complaint that PHL defrauded her into giving up 'all rights, benefits and profits due her as the owner of the J-5 TC vaccine as well as the money paid to defendants to purchase said shares.' She continued: 'Plaintiff was justified in relying upon those representations, especially in that she had paid $20,000 for 20 shares to PHL

15

[referring to the total amount paid to all defendants] . . ., having been allowed to purchase those shares as partial compensation in return for PHL's use of her J-5 TC vaccine.'

"The trial court instructed the jury concerning the out-of-pocket loss standard of fraud damages as . . . [¶]. . . 'the difference, if any, between the actual value of that with which the Plaintiff parted and the actual value of that with which [*sic*] was received. . . .'

"Wallis paid $15,000 to PHL but failed to receive an ownership interest in the corporation as promised, meaning she received no value; therefore, under this standard she is entitled to $15,000 in fraud damages. However, Wallis's argument in support of the damages is that PHL's fraud concerning Wallis's money gave PHL access to the antigen. She states: 'Defendants made false promises and representations to Dr. Wallis concerning her "buy-in" to the company and her shareholder status, and as a direct result of that fraud obtained access to Dr. Wallis'[s] antigen. The damages awarded properly reflect the value of the antigen Dr. Wallis gave up as a result of Defendants' fraud.' This argument fails entirely to address the standard for fraud damages:  out-of-pocket loss. Wallis's novel fraud-damages theory posits that she can recover values associated with ownership of the antigen based on PHL's fraud related to her money. She cites no authority for this theory. Indeed, she fails even to attempt to relate it to the out-of-pocket standard for fraud damages (the only fraud-damages theory presented to the jury), except to say that it reflected the market value of the antigen. PHL, however, did not defraud her out of the antigen, according to the jury.  [¶] . . . [¶]

"Wallis concludes:  'Defendants' fraud did not just involve the illusory purchase of shares. Defendants' false representations concerning Dr. Wallis'[s] money were the means by which they induced her to give them access to the antigen, and ultimately sell it to Upjohn. Dr. Wallis did not just "give up" her money as a direct result of Defendants' fraud; she "gave up" the antigen as well.'

"This argument is not tenable. Having asked the jury and having received the answer that *there was no fraud* related to the antigen, Wallis cannot now argue

16

successfully that *there was fraud* related to the antigen.  The jury concluded PHL *did not* make a false promise to Wallis or a false representation of material fact related to the antigen.  If PHL did not make a false promise or a misrepresentation related to the antigen, PHL did not take the antigen by fraud, and PHL is not liable to Wallis for fraud damages related to the antigen.  There simply is no other way to interpret the special findings relating to fraud.

"That leaves, then, the question of what to do about the inconsistency between the fraud findings and the fraud damages awarded by the jury.  Wallis provides no analysis concerning how the damages award can be justified considering the fraud only as to Wallis's money.  Instead, she argues that the jury properly awarded the damages based on the fair market value of the antigen.  PHL, on the other hand, contends that Wallis was entitled only to $15,000, the amount she paid to PHL for the shareholder buy-in.  PHL has the better argument.  When a special verdict concerning liability does not support the damages awarded, the damages award must be modified to conform to the liability finding if the amount of damages properly awarded is definite.  [Citations.]  That is the case here.  The damage resulting from PHL's fraud relating to Wallis's money is $15,000, the amount of Wallis's out-of-pocket loss, and not $1,944,997.  Accordingly, we must modify the judgment to reflect the proper amount."  (Original italics, fn. omitted.)

On the retrial of the equitable claims, the trial court sought to distinguish our opinion in awarding equitable relief based on Wallis's disclosure of the antigen in reliance on the false promise to make her a shareholder.  The trial court stated, "Wallis invented the antigen, as part of her duties, and she and the company nonetheless agreed that she would own it.  [¶]  But PHL, which later sold the antigen to Upjohn, did not convert it, nor did it make any misrepresentation or fraudulent statement with respect to it.  So PHL had and then sold Wallis's invention, but did not take it, or defraud her out of it.  How could this be?

17

"The answer," the trial court continued, "is that Wallis *unilaterally relinquished* the antigen to PHL, in reliance on its collateral assurance that she would be made an owner of the company. While the Court of Appeal has found that this relinquishment cannot support legal fraud damages for PHL's use and sale of the antigen, this court finds that it presents an appropriate case for equitable relief, as PHL has been unjustly enriched by its false promise to make Wallis an owner." (Original italics.)

The trial court found as follows, italicizing the jury's findings from the liability trial and language from our opinion: "In reliance on the offer of an ownership position in the company, Wallis disclosed the outline of production for the antigen to PHL. [¶] The offer did not mention the antigen, and *neither PHL nor any of the individual defendants made a false promise or false representation to Wallis related to the antigen.* [¶] Instead, Wallis unilaterally decided to disclose the antigen after being offered an ownership position, because she determined that her interests would be adequately protected by that position. The court finds credible Wallis's testimony that the prospect of an equity interest in PHL caused her to divulge the 'recipe' for the antigen to the company." (Original italics.)

The trial court recognized that the jury in the liability trial found that PHL did not make a false promise or representation to Wallis as to any material matter related to the antigen, and that the misrepresentation was about Wallis's ownership in PHL. However, the court distinguished those findings from its holding, stating the jury's findings addressed the "subject matter" of the misrepresentation, not the "consequences" of the misrepresentation. The jury was not asked about the "collateral consequences" of PHL's share fraud, and the court found credible Wallis's testimony "that one consequence was Wallis's unbidden decision to divulge the recipe for the antigen."

The trial court also determined the antigen was a trade secret. Because of Wallis's disclosure, PHL obtained ownership of the trade secret and Wallis lost all rights to it.

18

The trial court stated that PHL "*did not deliberately interfere with the antigen*, that is, PHL did not take or convert the antigen from Wallis, but instead received it through her decision to disclose it." (Original italics.) The issue, then, was whether that decision was fraudulently induced.

The trial court ruled that PHL's offer of ownership was fraudulent, and Wallis reasonably relied on PHL's offer to her detriment. The offer was fraudulent because, as the jury found, "*PHL and the individual defendants knowingly made a false representation to Wallis related to her money for the purposes of inducing Wallis to justifiably rely on it, which she did, unaware that the representation was false and that PHL and the individual defendants did not intend to perform on it.*" (Original italics.)

The court found that Wallis detrimentally relied on the fraudulent offer of ownership in two ways. First, she gave money for an ownership stake in PHL, and she has been compensated for that wrong. Second, she unilaterally disclosed the antigen to PHL and thereby transferred ownership of the trade secret, losing any rights she had in it. The court explained: "This disclosure was unilateral in the sense that PHL did not ask for it, nor did PHL make *a false promise or false representation to Wallis related to the antigen.* Instead, Wallis was lulled into a sense of security by PHL's false assurance of her impending ownership, and thus disclosed the antigen to PHL." (Original italics.)

The trial court stated its decision did not conflict with our earlier opinion. It said, "[T]he Court of Appeal has held that PHL cannot be legally liable for fraud as to the antigen unless the misrepresentation or false promise was about the antigen. [¶] But nothing in the Court of Appeal's opinion or any other authority forecloses equitable relief when a defendant makes a promise about one subject (ownership in the company), which causes a plaintiff to take action regarding another subject (access to the antigen). The Court of Appeal's rejection of Wallis's 'share fraud' theory as a basis for fraud recovery in law does not foreclose Wallis's claim for relief here in equity. [¶] While Wallis was not defrauded out of the antigen, she did relinquish it as a 'gratuitous transfer' based on a

19

collateral false assurance. (See Rest.3d, Restitution and Unjust Enrichment, § 13, com. f, pp. 170-171.)" (Fn. omitted.)

In a footnote, the trial court questioned our analysis: "The Court of Appeal cite[s] no precedent for the proposition that the fraudulent statement must be topically related to the claimed damage, and it is unclear why there should be no recovery at law when a misrepresentation about subject X causes reliance concerning subject Y. (Perhaps the answer relates to foreseeability.) In any event, this court of course accepts the Court of Appeal's conclusion that Wallis's fraud claim cannot support damages relating to the antigen because the topic of the fraudulent statement was something different, namely ownership of a stake in the company."

Despite that acceptance, the trial court held it could award equitable damages relating to the antigen based on the fraud. It stated, "Equity is designed for unusual factual scenarios like this. The wrong here is apparent—Wallis invented the antigen, agreed with her employer that she should keep it, and only provided access to it when her employer falsely promised to give her a stake in the company. She then received nothing when her employer sold it for a substantial sum."

The court acknowledged that equity follows the law and a court sitting in equity cannot create remedies forbidden by law. "But," the court stated, "while the law does not provide for relief here, it also does not foreclose it. (See Civ. Code, § 3343, subdivision (b)(2) [equitable remedies not foreclosed by out-of-pocket rule for fraud recovery].) [¶] Instead, this case presents a novel factual situation apparently not addressed by precedent, wherein a misrepresentation on one subject causes substantial collateral detrimental reliance with respect to another. In such circumstances it is appropriate for the court to assert its equitable power to address the manifest injustice that would otherwise result. (See *Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App. 4th 1125, 1133 [equitable 'powers are broad enough to address novel conditions and to meet the requirements of every case'].)"

20

PHL contends the trial court's ruling violates the law of the case established in our earlier opinion.

B.    *Analysis*

"Under the doctrine of the law of the case, a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal." (*People v. Jurado* (2006) 38 Cal.4th 72, 94.)  " '[W]here an appellate court states a rule of law necessary to its decision, such rule " 'must be adhered to' " in any " 'subsequent appeal' " in the same case, even where the former decision appears to be " 'erroneous' " ' (*People v. Whitt* (1990) 51 Cal.3d 620, 638 (*Whitt*), quoting *People v. Shuey* (1975) 13 Cal.3d 835, 841.)  Thus, the law-of-the-case doctrine 'prevents the parties from seeking appellate reconsideration of an already decided issue in the same case absent some significant change in circumstances.' (*Whitt, supra,* at p.  638.)  The doctrine is one of procedure, not jurisdiction, and it will not be applied 'where its application will result in an unjust decision, e.g., where there has been a "manifest misapplication of existing principles resulting in substantial injustice" [citation] . . . .' (*People v. Stanley* (1995) 10 Cal.4th 764, 787.)" (*People v. Boyer* (2006) 38 Cal.4th 412, 441.)

To apply the law of the case doctrine, we must review and interpret our earlier opinion for the principle or rule it established, recognizing that we must interpret that rule within its context.  " ' "[L]anguage contained in a judicial opinion is ' "to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered.  [Citation.]" ' [Citations.]" [Citation.]  When questions about an opinion's import arise, the opinion "should receive a reasonable interpretation [citation] and an interpretation which reflects the circumstances under which it was rendered [citation]" [citation], and its statements should be considered in

context [citation].' (*Dyer v. Superior Court* (1997) 56 Cal.App. 4th 61, 66.)" (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App. 5th 564, 577, fn. 7.)

When we rejected Wallis's fraud theory, we did so in the context of applying the correct standard of damages. PHL had contended the special verdicts were inconsistent, and we agreed, finding the jury's damage award far exceeded Wallis's out-of-pocket damages. Wallis claimed PHL obtained access to the antigen by the share fraud, and her out-of-pocket costs included the value of the antigen. We stated, "This argument fails entirely to address the standard for fraud damages: out-of-pocket loss." Any discussion by us regarding Wallis's theory concerned her inability to show that a misrepresentation or false promise related to the antigen caused her to suffer out-of-pocket costs. We did not intend to bar her from using her theory to obtain relief beyond her out-of-pocket costs if she could prove a cause of action where such relief was available. As a result, our opinion does not stand for the proposition that Wallis cannot show PHL was unjustly enriched if it wrongfully induced her to disclose the antigen in reliance on the promise of becoming a shareholder.

PHL contends the jury rejected Wallis's share fraud theory by finding PHL did not make a false promise or misrepresentation related to the antigen. It also claims that our statement based on the jury's findings that "PHL did not take the antigen by fraud" meant that the jury found, and we held that PHL's misrepresentation regarding Wallis's shareholder status did not cause her to disclose the antigen.

To the contrary, the jury's findings and damage award show the jury was convinced that PHL's misrepresentation regarding Wallis's status as a shareholder caused Wallis to disclose the antigen to her detriment. After finding PHL made a misrepresentation regarding Wallis's "money," i.e., misrepresenting her status as a shareholder, the jury proceeded to address the other elements of fraud. It found PHL knew its misrepresentation was false, that it made the misrepresentation to induce Wallis to rely on it, and that Wallis was unaware of the misrepresentation's falsity.

The jury then addressed the element of causation. Under California law, juries find causation for fraud by determining if the plaintiff's reliance on the misrepresentation was a substantial factor in causing the harm (actual reliance), if the plaintiff reasonably relied on the defendant's misrepresentation (justifiable reliance), and the extent to which the plaintiff was harmed by that reliance (resulting damages). (*Beckwith v. Dahl* (2012) 205 Cal.App. 4th 1039, 1062; CACI No. 1900.) Here, the jury found that Wallis relied on the shareholder misrepresentation and that she was justified in doing so. Crucially, when it determined damages, the jury awarded more than $1.9 million, far more than the $15,000 Wallis had actually paid to PHL. The jury's damage award can be read only to indicate the jury found that PHL's misrepresentation of Wallis's shareholder status caused her damage in the form of the loss of the antigen.

Our ruling on appeal was that the jury erred by awarding more in fraud damages than Wallis had paid to PHL. But our holding was limited to that point. The issue of whether the jury had erred by finding the share fraud caused Wallis's disclosure of the antigen was not before us. And our acceptance of the jury's findings that PHL did not make a false promise or a misrepresentation related to the antigen did not as a matter of law foreclose the jury, or a court in equity, from finding the misrepresentation related to Wallis's shareholder status caused her to disclose the antigen to PHL to her detriment. Accordingly, our opinion was not law of the case on that issue, as the trial court correctly determined.

II

*CUTSA Supersession*

With the law of the case doctrine not barring the trial court's award of equitable relief, PHL contends Wallis's causes of action in equity were superseded by CUTSA. CUTSA provides the exclusive civil remedies for claims of trade secret misappropriation. PHL argues that because Wallis alleged, and the jury found that PHL acquired the

23

antigen by misrepresentation, and the trial court held the antigen was a trade secret, Wallis's claim is one of trade secret misappropriation and can be brought only under CUTSA. The import of this, PHL claims, is that Wallis cannot recover under her equitable claims because she did not timely bring a CUTSA action and is barred from doing so under the three-year statute of limitations.

PHL also claims the trial court erred when it held PHL could not raise CUTSA as a defense because it did not allege it as an affirmative defense in its answer. PHL argues that the application of CUTSA shows Wallis cannot state a claim for equitable relief, and a defendant may raise that defense at any time.

For her part, Wallis contends the trial court's ruling is correct. She argues that application of CUTSA is an affirmative defense that must be pleaded in the answer or is forfeited. She claims that even if the defense is not forfeited, it does not apply here as she did not plead equitable claims based on trade secret misappropriation, the jury and the trial court made findings that no misappropriation occurred, and inducement to enter into an agreement is not a claim that is displaced by CUTSA.

We conclude CUTSA supersedes Wallis's claims for equitable relief, and PHL was not barred from raising the defense during trial.

A.    *CUTSA*

Prior to CUTSA's adoption, equity protected the misappropriation of trade secrets. The unauthorized disclosure or use of a trade secret was not a violation of a property right, but rather a breach of confidence. (13 Witkin, Summary of Cal. Law (11th ed. 2017) Equity, § 83.) "The typical remedies for wrongful use of a trade secret [were] damages (consisting usually of an accounting for profits from the unauthorized use) and an injunction against future disclosure or unauthorized use." (*Id*. at § 85.)

The Legislature adopted CUTSA in 1984. (Civ. Code, § 3426 et seq.) The act " 'codifies the basic principles of common law trade secret protection' . . . ." (13 Witkin,

Summary of Cal. Law, *supra*, Equity, § 88, quoting Prefatory Note to Uniform Trade Secrets Act, 14 U.L.A. (Master Ed.), p. 530 et seq.) A complainant under the act may seek injunctive relief. (Civ. Code, § 3426.2.) She may also recover damages for the actual loss caused by the misappropriation and for any unjust enrichment that is not considered in computing damages for actual loss. (Civ. Code, § 3426.3, subd. (a).) In addition, if the misappropriation was willful and malicious, the complainant may recover exemplary damages and attorney fees. (Civ. Code, §§ 3426.3, subd. (c); 3426.4.)

When the Legislature adopted CUTSA, it intended to supersede or displace common law remedies for trade secret misappropriation. (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App. 4th 939, 954 (*K.C. Multimedia*).) " 'The stated purpose of the UTSA is to provide "unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law. The Uniform Act also codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation." ' (*American Credit Indemnity Co. v. Sacks* (1989) 213 Cal.App. 3d 622, 630, quoting [Comrs. Prefatory Note to Uniform Trade Secrets Act, ]14 West's U. Laws Ann. (1980) [Trade Secrets at] pp. 537-538.)" (*K.C. Multimedia,* at p. 957.)

By stating what claims it does not supersede, CUTSA displaces or supersedes all nonstatutory tort and equitable remedies for trade secret misappropriation. A provision of the act, Civil Code section 3426.7, reads in pertinent part: "(a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets. [¶] (b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret."

Interpreting this provision, courts have held that "CUTSA may supersede various claims, including, inter alia, claims for conversion, common count, quantum meruit, unjust enrichment, breach of confidence, unfair competition, and intentional and negligent misrepresentation where the wrongdoing alleged in connection with such claims is the misappropriation of trade secrets." (*SunPower Corp. v. SolarCity Corp.* (2012) 2012 U.S. Dist. LEXIS 176284, at pp. *10-11 (collecting cases), italics omitted.) The supersession provision "would appear to be rendered meaningless if, in fact, claims which are based on trade secret misappropriation are not preempted by the state's statutory scheme." (*Digital Envoy, Inc. v. Google, Inc.* (2005) 370 F.Supp. 2d 1025, 1035.)

The test for determining whether a cause of action is displaced by CUTSA is based on the facts as pleaded, or as in this case, proven, and not on the plaintiff's designation or theory of the cause of action. The focus is on "whether 'other claims are not more than a restatement of the same operative facts' supporting trade secret misappropriation. . . . If there is no 'material distinction' between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA [claim] preempts the other claim." (*Convolve, Inc. v. Compaq Computer Corp.* (S.D.N.Y. 2006) 2006 U.S. Dist. LEXIS 13848, at pp. *23-24 (applying California law).) Accordingly, CUTSA "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.' (*Digital Envoy, Inc. v. Google, Inc., supra*, 370 F.Supp. 2d at p. 1035.)" (*K.C. Multimedia, supra*, 171 Cal.App. 4th at p. 958.)

B.    *Affirmative defense*

Wallis contends, and the trial court found, that PHL cannot now raise CUTSA supersession as a defense. The court stated the defense was new matter that did not

26

respond to any of the complaint's allegations and thus had to be pleaded as an affirmative defense, which PHL had not done. We disagree with the court's ruling.

"When California law prohibits the prosecution of a particular cause of action, . . . then the defense of failure to state a cause of action is properly raised to terminate the litigation." (1 Schwing and Carr, California Affirmative Defenses (2d ed. 2019) § 9:1; see *Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App. 4th 257, 266-270, 281-282 [general demurrer properly sustained against cause of action abolished by statute or prohibited by the Constitution]; *Haldane v. Bogy* (1962) 208 Cal.App. 2d 302, 304 [general demurrer properly sustained against cause of action abolished by statute].)

The defense of failure to state a cause of action can be raised at any time, including for the first time on appeal. (Code Civ. Proc., § 430.80, subd. (a); *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 7, fn. 2; *Falahati v. Kondo* (2005) 127 Cal.App. 4th 823, 831, fn. 18.) "Although an appellate court will normally refuse to consider points not raised below, questions of law as to failure to state a cause of action may always be reached on appeal." (*Henry v. Associated Indemnity Corp.* (1990) 217 Cal.App. 3d 1405, 1413, fn. 8.)

The failure to state a claim need not be pleaded as an affirmative defense. The defense " 'is not a proper affirmative defense, but rather asserts a defect in [the plaintiff's] prima facie case.' [Citations.] . . . The defense of failure to state a claim is, in essence, an argument that the plaintiff has not met its burden of alleging the elements of its claims." (*LL B Sheet 1, LLC v. Loskutoff* (2019) 362 F.Supp. 3d 804, 818.)

PHL was not prohibited from raising CUTSA supersession for the first time in the equity trial. PHL's contention that CUTSA superseded Wallis's claims for equitable relief was a defense that Wallis failed to state a cause of action. Such a defense is not an affirmative defense, and PHL did not need to plead CUTSA supersession in its answer before raising it at trial.

Wallis argues that the CUTSA defense raised issues outside the pleadings and thus had to be alleged in PHL's answer because she did not specifically plead a cause of action for misappropriation. We disagree.

CUTSA displaces not just a cause of action for misappropriation, but all equitable and tort claims that could arise from conduct that falls within the statute's definition of trade secret misappropriation. "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.' ([Civ. Code,] § 3426.7, subds. (a), (b).)" (*Silvaco Data Systems v. Intel Corp.* (2010) 184 Cal.App. 4th 210, 236, disapproved on another ground in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337.) "[T]he pertinent statutory language—'based upon misappropriation'—strongly suggests a factual inquiry, one that examines the conduct alleged in the claim. (See *AccuImage Diagnostics Corp v. Terarecon, Inc.* [(2003)] 260 F.Supp. 2d [941,] 953-954 [determining preemption by examining 'the conduct at issue'] . . . ." (*K.C. Multimedia, supra*, 171 Cal.App. 4th at p. 958.) Even Wallis admits CUTSA "was enacted to occupy the field of misappropriation of trade secrets and to supersede conduct falling within its terms." That she did not plead a cause of action entitled trade secret misappropriation did not prevent CUTSA from displacing her common law claims if they arose from the same nucleus of facts that under CUTSA would constitute misappropriation.

Wallis also claims the CUTSA defense was forfeited if not raised in the answer because the defense does not attack the trial court's jurisdiction. She relies on authority from federal and sister-state courts that hold a defense of preemption or supersession can be waived if not raised as an affirmative defense if it alters only the substantive law governing the case, not the judicial forum applying it. (See *Brannan v. United Student Aid Funds, Inc.* (9th Cir. 1996) 94 F.3d 1260, 1266 (*Brannan*); *Johnson v. Armored Transport of California, Inc.* (9th Cir. 1987) 813 F.2d 1041, 1043-1044 (*Johnson*); *Hawg*

28

*Tools, Inc. v. Newsco Int'l. Energy Services* (Colo. 2016) 411 P. 3d 1126, 1135, 1138-1139 (*Hawg Tools*).)

Wallis's authorities do not apply. While they may correctly express federal and Colorado law, they neither state California law nor reflect the facts of this case.

"Litigants ordinarily argue preemption in a motion to dismiss, either for failure to state a claim or for lack of subject-matter jurisdiction." (*Johnson, supra*, 813 F.2d at p. 1043.) Under federal and Colorado law, "a preemption argument that affects the choice of forum rather than the choice of law is not waivable; thus, it can be raised for the first time on appeal." (*Gilchrist v. Jim Slemons Imports, Inc.* (9th Cir. 1986) 803 F.2d 1488, 1497 (*Gilchrist*); *Town of Carbondale v. GSS Properties, LLC* (Colo. 2007) 169 P. 3d 675, 682.) This is because such a preemption argument challenges the trial court's subject matter jurisdiction—a defense that can be raised at any time. On the other hand, preemption of the choice of law does not go to the court's subject matter jurisdiction and thus, under federal and Colorado law, cannot be raised for the first time after trial. (*Brannan, supra*, 94 F.3d at p. 1266; *Johnson,* at pp. 1043-1044.)

As stated above, California law is different. Under California law, a defendant need not plead the failure to state a claim as an affirmative defense, and the defendant may raise the defense even for the first time on appeal. (Code Civ. Proc., § 430.80, subd. (a).) This applies even if the defense is not based on lack of jurisdiction. There can be no dispute that the supersession or displacement of a cause of action goes to whether the plaintiff can state a claim for relief. If CUTSA superseded Wallis's equity claims, she cannot state a cause of action for relief in common law equity, and PHL can make that defense without having alleged it as an affirmative defense.

Additionally, the facts in Wallis's cited cases are distinguishable. Both the Federal and Colorado Rules of Civil Procedure allow a defendant to raise the defense of failure to state a claim in a pleading, a motion, or at trial. (Fed.R.Civ.Proc., rule 12(h); Colo.R.Civ.Proc., rule 12(h).) In *Brannan, Johnson*, and *Gilchrist*, the defendants raised

the preemption defense for the first time *after trial or on appeal*. (*Brannan, supra*, 94 F.3d at p. 1266; *Johnson, supra*, 813 F.2d at p. 1043; *Gilchrist, supra*, 803 F.2d at p. 1496.) In *Hawg Tools*, the defendant raised the defense for the first time after trial by a motion for judgment notwithstanding the verdict. (*Hawg Tools, supra*, 411 P. 3d at p. 1135.)

Here, PHL raised the defense at the equity trial. Indeed, the trial court initiated the matter by finding in its tentative decision that the antigen was a trade secret. When PHL objected, the court stated that the CUTSA displacement issue likely came to light through its tentative decision, and it asked the parties to brief the issue. Both parties fully argued the issue in their supplemental trial briefs, and the trial court ruled on the issue in its final decision. Unlike in Wallis's cited cases, the issue arose here at trial.

Wallis contends PHL's argument is at odds with PHL's opposition to her motion in the liability trial to amend her complaint to allege a claim of misappropriation under CUTSA. It is. But Wallis did not challenge on appeal the trial court's denial of her motion or its later dismissal of her cross-complaint raising a claim under CUTSA. Those decisions are now final.

PHL's defense of failure to state a claim due to displacement by CUTSA was not an affirmative defense, and PHL was not prohibited from raising it for the first time at the new trial on equitable relief.

C.     *Supersession of equitable claims*

At issue, then, is whether Wallis's claims for equitable relief are superseded by CUTSA because they are based on the same nucleus of facts that would support a claim for misappropriation of trade secrets. We conclude they are superseded. Under CUTSA, trade secret misappropriation occurs, among other times, whenever a person "acquires another's trade secret with knowledge or reason to know 'that the trade secret was acquired by improper means[.]' " (*DVD Copy Control Assn., Inc. v. Bunner* (2003)

30

31 Cal.4th 864, 874, quoting Civ. Code, § 3426.1, subd. (b)(1).) "Improper means" includes "misrepresentation." (Civ. Code, 3426.1, subd. (a).)

Wallis argued, and the jury and the trial court found that PHL acquired the antigen due to Wallis's reliance on PHL's misrepresentation of her shareholder status. The jury also found that PHL knowingly made a false representation and induced Wallis to rely on it, which she did. This finding establishes that PHL knew or had reason to know that it acquired the antigen by misrepresentation. This is trade secret misappropriation, and it is the same nucleus of facts on which her equitable claims are based.

Wallis contends CUTSA did not supersede her equitable claims. She raises several reasons. She argues the equitable claims are not based on misappropriation. Rather, they assert Wallis allowed PHL to use the antigen in exchange for compensation as a shareholder, a factual scenario she claims is distinct from the facts that would support a misappropriation claim. This scenario, however, is not what the jury and trial court found. The court found that Wallis "relinquished" the antigen to PHL, not just licensed PHL to use it. The court also found that Wallis relinquished the antigen "in reliance" on PHL's false promise to make her a shareholder. Her claims for equitable relief are based on the same nucleus of facts that would support a claim for misappropriation due to misrepresentation.

Wallis asserts the jury's findings foreclose a misappropriation claim. She contends misappropriation would have required PHL to commit an intentional act related to the antigen, but the jury found that PHL did not make a misrepresentation or false promise related to the antigen. As we have tried to make clear in this opinion, the misrepresentation did not have to "relate" to the antigen for PHL to be held liable. The scope of liability is based on the extent Wallis actually and reasonably relied on the misrepresentation. If PHL acquired the antigen by falsely and knowingly inducing Wallis to believe she was a shareholder, then it acquired the trade secret by misrepresentation—which is misappropriation under CUTSA.

31

Wallis claims the trial court found that her equitable claims were not based on misappropriation. She notes the court stated she had no claim for misappropriation "because she unilaterally relinquished the antigen, *albeit in reliance on the promise of a stake in the company.*" (Italics added.) She argues her claims for equitable relief were based on her reliance, not on PHL's intent to take the antigen by improper means, a showing she claims misappropriation requires. She and the trial court cannot have it both ways. If she relinquished the antigen due to her reliance on PHL's knowingly false promise, as the jury and trial court said she did, then PHL acquired the antigen by means of misrepresentation, and that act constitutes misappropriation under CUTSA.

Wallis asks us to find persuasive an unpublished federal opinion in which the district court found that inducement to enter into an agreement was not a claim that was superseded by CUTSA. That holding, however, was based on the case's unique facts. In *Anokiwave, Inc. v. Rebeiz* (2018) 2018 U.S. Dist. LEXIS 158346 (*Anokiwave*), the defendant agreed to become a member of the plaintiff company's advisory board. He agreed he would not disclose the company's proprietary information, would not engage in unfair competition, and would not disclose confidential information about the company's business affairs. The defendant received access to the company's trade secrets and other proprietary information. He also received stock options. (*Id*. at p. *2.)

The company ultimately sued the defendant for disclosing its proprietary information and competing with it. The company alleged causes of action for breach of contract, breach of fiduciary duty, fraud in the inducement, other tort actions, false advertising, unfair competition, trade secret misappropriation, and federal work infringement. (*Anokiwave, supra*, 2018 U.S. Dist. LEXIS 158346 at pp. *3-4.)

The district court dismissed the company's tort and unfair competition claims except for the claim of fraud in the inducement. The court found the other tort actions were preempted by CUTSA. (*Anokiwave, supra*, 2018 U.S. Dist. LEXIS 158346 at pp. *3-8.) The court noted that the elements of fraud in the inducement of a contract are

32

the same elements as actual fraud. (*Id.* at p. *14.) Yet, in this instance, CUTSA did not preempt the inducement claim because the company's overall contention was that the defendant's false representation induced the company to enter into a contract with him. The "gist" of the claim focused on the inducement to enter into the contract in "the first place," not the inducement to disclose confidential information. (*Id.* at p. *15.)

Unlike in *Anokiwave*, the gist of Wallis's equitable claims, as found by the jury and the trial court, focused on the inducement to relinquish the antigen in reliance on the misrepresentation of being a shareholder, not on the inducement simply to enter into the shareholder agreement. The thrust of Wallis's arguments is that PHL's misrepresentation of her shareholder status caused her to relinquish the antigen. This is what the jury found in its award of damages and what the trial court found in its award of equitable relief. Unlike in *Anokiwave*, Wallis's equitable claim does not have a basis independent from her allegations of facts that constitute misappropriation under CUTSA. Thus, her cause of action was limited to recovery under CUTSA.

Because Wallis's claims for equitable relief are superseded by CUTSA, she may recover only under that statute. Wallis, however, did not plead a misappropriation claim under CUTSA, and the statute of limitations to do so expired long ago. A claim for misappropriation must be brought within three years of discovering the misappropriation or when the misappropriation should have been discovered by the exercise of reasonable diligence. (Civ. Code, § 3426.6.) At the latest, Wallis should have discovered the misappropriation when PHL's counsel informed her in March 1992, after PHL had terminated her employment and sold the antigen, that she was not and had not been a shareholder. Although she filed her first complaint in June 1994, she did not include a cause of action under CUTSA. She sought leave to amend to include a CUTSA cause of action during trial in 2000, but she did not challenge the trial court's denial of that motion on appeal, nor did she challenge the court's dismissal of her post-trial cross-complaint

33

which attempted to raise the cause of action. Neither did she seek to amend her complaint in the equity trial. It is now too late to raise the claim.

Because Wallis's equitable claims are superseded by CUTSA, and because she did not timely bring a claim under CUTSA, the trial court erred in awarding her damages on her equitable claims.

## DISPOSITION

A peremptory writ of mandate shall issue and order the trial court to vacate its October 9, 2018, statement of decision and to enter a new statement of decision finding that Wallis's claims for equitable relief are superseded by CUTSA and to enter a judgment in favor of PHL and against Wallis on each of her equitable claims. The stay of all trial court proceedings entered by this court on August 23, 2019, is vacated upon finality of this opinion. Costs on appeal are awarded to PHL. (Cal. Rules of Court, rule 8.493(a).)

_____

HULL, Acting P. J.

We concur:

_____

ROBIE, J.

_____

MAURO, J.