Filed 12/18/25  Petitioner 1 v. Cal. Office of the Inspector General CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| PETITIONER 1, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA OFFICE OF THE INSPECTOR GENERAL, <br><br> Defendant and Respondent. | B346539 <br><br> (Los Angeles County Super. Ct. No. 24STCP00268) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Law Offices of Brian A. Baudendistel and Brian A. Baudendistel for Plaintiff and Appellant.

Rob Bonta, Attorney General, Gabrielle H. Brumbach, Supervising Deputy Attorney General, Arang Chun, Deputy Attorney General for Defendant and Respondent.

The California Office of the Inspector General (OIG) is charged with overseeing the California Department of Corrections and Rehabilitation (CDCR), including what was the California Youth Authority (CYA). (Gov. Code, § 12838.5; Pen. Code, § 6001.) After plaintiff Petitioner 1 (plaintiff) accepted a job offer with defendant the OIG but before his start date, the OIG located news articles suggesting plaintiff misrepresented information in his personal history statement. He indicated he knew two people who were CDCR employees, inmates, or wards, when the articles indicated he knew more. The OIG voided his appointment. Plaintiff filed a petition for writ of mandate seeking reinstatement of the appointment. He argued the OIG's decision was unlawfully based on his refusal to disclose privileged information about a sealed juvenile proceeding. The trial court denied the petition. On appeal, plaintiff contends the OIG's decision violated Welfare and Institutions Code sections 781 and 827, Labor Code section 432.7, Government Code section 12952, and the right to privacy under the California Constitution. We disagree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    The OIG's Offer of Employment to Plaintiff**

The OIG is an independent state entity responsible for overseeing CDCR. (Pen. Code, § 6125 et seq.) Its duties include conducting neutral assessments of CDCR's staff, policies, and practices. In August 2023, plaintiff applied for an attorney position with the OIG.

In October 2023, the OIG made plaintiff a conditional offer of employment pending successful completion of a background check. The conditional offer included a personal history

2

statement form.  The form admonished, "Any significant discrepancies in the information contained in the [personal history statement form], the information gathered during the background process, and/or the information provided by you during the background process may be cause for concern and may eliminate you from consideration for this position.  Accordingly, you should be honest and thorough in your verbal and written answers."  The personal history statement form added, "[D]eliberate misstatements or omissions can and often will result in your application being rejected, regardless of the nature or reason for the misstatements/ omissions."

In addition to other information, the personal history statement form inquired into plaintiff's knowledge of employees, inmates, and wards of CDCR.  The form included the following questions:  (1) "Do you know or have you ever known anyone who is or has ever been an employee of the [CDCR] (this includes the pre-2005 [CDCR] and the [CYA])?"; and (2) "Do you know or have you ever known anyone who is or has ever been an inmate or ward of the [CDCR] (this includes the pre-2005 [CDCR] and the [CYA])?"  (Some capitalization omitted.)  As to the first question, plaintiff answered, "No."  As to second, plaintiff responded, "Yes," and identified a "[f]riend" who was his roommate in 1992.[1]

A different section included a "privacy statement" (capitalization omitted), instructing, "You do not need to list those offenses that have been sealed, expunged, or destroyed under . . . Welfare and Institutions Code section 781."  Plaintiff

---

[1]     In response to a question inquiring if plaintiff had "ever testified against any person who was committed to a state or federal prison," plaintiff identified an incarcerated individual he testified against as part of his existing employment duties.

3

signed the personal history statement under "penalty" of forfeiting all rights to employment with the OIG and certified there were "no misrepresentations, omissions, or falsifications in the foregoing statements and answers to questions, and that all statements and answers are true and correct."

In late October 2023, the OIG made plaintiff a final offer of employment, which he accepted. Plaintiff's start date was set for early December 2023.

In mid-November 2023, the OIG sent plaintiff a letter stating that after it informed plaintiff he cleared its background check, it learned from newspaper articles available online that plaintiff spent time as a ward of CYA. The information suggested plaintiff's responses to the questions on the personal history statement were not completely honest and forthcoming.

The OIG acknowledged that if plaintiff's conviction records were sealed by a court of law, he would be excused from providing information about the sealed criminal proceedings or the underlying events. However, plaintiff would "not be excused from truthfully answering questions . . . about [his] knowledge of CDCR/CYA employees, inmates, or wards or [his] interactions with them while incarcerated." The OIG said it asked questions about an applicant's relationships and interactions with "CDCR/CYA staff, inmates, and wards" to determine whether an applicant was capable of providing neutral, independent assessments of CDCR practices, policies, and staff performance. The OIG stated it was inclined to void its "offer of employment based on [its] conclusion that it was procured fraudulently and in bad faith," but it gave plaintiff an opportunity to respond.

Plaintiff responded the same day. Plaintiff said he did not intend to provide misleading information and he believed his

4

responses were consistent with the law and instructions on the form. Plaintiff stated that under Welfare and Institutions Code section 781, he had a right not to disclose sealed juvenile adjudications, including "any aspect of a commitment to the [CYA] which may have resulted from said proceedings." He did not provide any additional information about his knowledge of employees, inmates, and wards of CDCR.

A few days later, the OIG informed plaintiff he did not have a "lawful justification for failing to disclose that [he] knew people who have been employees of the [CDCR] (which includes the pre-2005 [CDCR] and the [CYA]) and that [he] knew people who have been inmates or wards of the [CDCR] (which includes the pre-2005 [CDCR] and the [CYA])." The OIG withdrew its offer of employment.

## B.    Petition for Writ of Mandate

In his operative second amended petition for writ of mandate and complaint for declaratory relief, plaintiff alleged the OIG unlawfully voided his civil service appointment as an attorney because he had not disclosed matters relating to the proceedings of a sealed juvenile adjudication. Plaintiff asserted the OIG's employment practices violated Welfare and Institutions Code sections 781 and 827, Government Code section 12952, Labor Code section 432.7, and his right to privacy under the state Constitution. Plaintiff sought a writ of mandate directing the OIG to revoke its voiding of his appointment as an attorney. He also sought a declaration that the OIG's practices and policies violated the aforementioned laws.

The trial court held a hearing and denied the petition. The court determined that the OIG did not act unlawfully in

5

rescinding the offer of employment and that plaintiff did not show the OIG abused its discretion.  This appeal followed.[2]

## DISCUSSION

Plaintiff argues the voiding of his appointment violated Welfare and Institutions Code sections 781 and 827, Government Code section 12952, Labor Code section 432.7, and Article I, Section 1 of the California Constitution.[3]  Plaintiff does not show the OIG violated these laws.

### A.      Standard of Review

Plaintiff does not dispute that the OIG's decision to withdraw its offer of employment was an exercise of discretion.

---

[2]      Plaintiff requests we take judicial notice of (1) the common meaning of the terms "principal," "function," and "correction"; (2) legislative history materials for Penal Code section 6126; (3) legislative history materials for Labor Code section 432.7; and (4) Welfare and Institutions Code section 781 as amended in July 1986. The trial court took judicial notice of the first three items, and the motion is unopposed.  The request is granted.  (Evid. Code, § 459, subd. (a).)

[3]      Plaintiff also states the OIG did not comply with procedural requirements set forth in Government Code section 19257.5 when it voided his appointment.  However, plaintiff did not allege in his second amended petition that the OIG violated Government Code section 19257.5.  (*Department of Finance v. City of Merced* (2019) 33 Cal.App.5th 286, 295 ["the pleadings outline the perimeter of materiality, that is, they delimit the scope of the issues that are pertinent to resolution of the case"].)  Further, plaintiff states he is not challenging the OIG's alleged failure to follow California Department of Human Resources procedures for voiding an appointment in his appeal.  Thus, we do not reach this issue.

"'Although traditional mandamus will not lie to compel the exercise of discretion in a particular manner, it is a proper remedy to challenge agency discretionary action as an abuse of discretion.'" (*CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 279.) "'In determining whether an abuse of discretion has occurred, a court may not substitute its judgment for that of the [agency] [citation], and if reasonable minds may disagree as to the wisdom of the [agency's] action, its determination must be upheld [citation].' [Citation.] A decision is an abuse of discretion only if it is 'arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair.'" (*Mooney v. Garcia* (2012) 207 Cal.App.4th 229, 235.)

Additionally, we review de novo legal issues such as issues of statutory interpretation. (*Rivero v. Lake County Bd. of Supervisors* (2014) 232 Cal.App.4th 1187, 1193–1194.) Although we independently review legal questions, the burden is on plaintiff to show error, even on de novo review. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708; *Jackson v. Carleson* (1974) 39 Cal.App.3d 12, 16.) "'All presumptions usually made by an appellate court in considering appeals apply to a proceeding in mandamus. [Citation.] The judgment is presumed to be correct, and the burden is on appellant to show reversible error.'" (*Jackson*, at p. 16.)

## B.     Principles of Statutory Interpretation

"The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the statute." (*Law Office of Carlos R. Perez v. Whittier Union High School Dist.* (2023) 87 Cal.App.5th 463, 472.) We begin with the statutory language because it is

7

generally the most reliable indicator of legislative intent. (*City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, 718–719; *DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 378.) "'"Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage."'" (*DeNike*, at p. 384.)

"'"If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs."'" (*DeNike v. Mathew Enterprise*, *supra*, 76 Cal.App.5th at p. 378; see *City of Alhambra v. County of Los Angeles*, *supra*, 55 Cal.4th at p. 719 ["'We consider extrinsic aids, such as legislative history, only if the statutory language is reasonably subject to multiple interpretations'"].) "'The plain meaning of the words of a statute may be disregarded only when the application of their literal meaning would (1) produce absurd consequences that the Legislature clearly did not intend or (2) frustrate the manifest purposes that appear from [the statute's] provisions . . . when considered as a whole in light of its legislative history.'" (*Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 239.)

## C. Plaintiff Does Not Show Welfare and Institutions Code Sections 781 and 827 were Violated

Plaintiff argues the OIG violated Welfare and Institutions Code sections 781 and 827 because the personal history statement form required plaintiff to disclose information about a sealed juvenile adjudication and confidential juvenile case file. While these sections protect records in juvenile court proceedings, we are not persuaded that they prevent the OIG from asking

8

about an applicant's knowledge of CDCR employees, inmates, and wards.

"'[Welfare and Institutions Code] [s]ection 781 provides for a noticed petition procedure for sealing a person's juvenile court records and related records in the custody of the probation department, law enforcement agencies, and other agencies.'" (*In re A.B.* (2023) 94 Cal.App.5th 82, 85.) "Section 781 in pertinent part provides that once the juvenile records in a matter are ordered sealed, 'the proceedings in the case shall be deemed never to have occurred, and the person may properly reply accordingly to any inquiry about the events, the records of which are ordered sealed.'"[4] (*Parmett v. Superior Court* (1989) 212 Cal.App.3d 1261, 1265–1266 (*Parmett*).) Black's Law Dictionary defines a "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment"; "[a]ny procedural means for seeking redress from a tribunal or agency"; "[a]n act or step that is part of a larger action"; and "[t]he business conducted by a court or other official body; a hearing." (Black's Law Dict. (12th ed. 2024); see also *In re M.C.* (2011) 199 Cal.App.4th 784,

---

[4] Plaintiff cites to former Welfare and Institutions Code section 781 as it was amended in July 1986. (Stats. 1986, ch. 277, § 1, p. 1363.) In his request for judicial notice, plaintiff asserts he is entitled to have his claims analyzed under the version of the statute in effect when the sealing order concerning his juvenile records was issued. "Section 781 was amended frequently after its enactment, typically to limit the circumstances under which a ward's records could be sealed." (*In re Jose S.* (2017) 12 Cal.App.5th 1107, 1120, fn. 6.) However, the relevant language of the statute quoted by plaintiff is nearly identical to the current version, and our interpretation of the language is consistent under both versions.

9

805 ["'In ordinary statutory usage a proceeding is commenced by the filing of a petition or complaint'"].)

Welfare and Institutions Code section 827 governs access to non-sealed juvenile case files. (*In re James H.* (2007) 154 Cal.App.4th 1078, 1084; see Welf. & Inst. Code, § 827, subd. (g).) Plaintiff contends the OIG is not included in the categories of people who have the right to inspect a non-sealed juvenile case file pursuant to this section. (Welf. & Inst. Code, § 827, subd. (a)(1); *In re Gina S.* (2005) 133 Cal.App.4th 1074, 1081.) "[A] 'juvenile case file' means a petition filed in a juvenile court proceeding, reports of the probation officer, and all other records, including any writing as defined in Section 250 of the Evidence Code, or electronically stored information relating to the minor, that is filed in that case or made available to the probation officer in making the probation officer's report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer." (Welf. & Inst. Code, § 827, subd. (e).)

The relevant questions on the OIG's personal history statement did not request records from plaintiff's juvenile court proceeding, and there is no evidence that the OIG inspected any such records. (See *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1086 [Welfare and Institutions Code section 827 inapplicable where no evidence minor's juvenile records were inspected].) The questions, regularly presented to those who apply to the OIG, asked if plaintiff knew anyone who was an employee, inmate, or ward of CDCR.

Plaintiff argues the questions required him to disclose the existence of, or details about, his sealed juvenile proceedings. He asserts the OIG would have asked follow-up questions that

10

"essentially open[ed] the records of the juvenile court to unfettered inspection." However, plaintiff does not show that the protections of Welfare and Institutions Code sections 781 and 827 are as broad as he asserts.

*Parmett*, *supra*, 212 Cal.App.3d 1261, is instructive. In *Parmett*, the plaintiff, Chrystal, sued Keith Parmett and his parents, claiming Keith molested her while his parents were providing childcare services when she and Keith were minors. (*Id.* at p. 1263.) Juvenile proceedings against Keith as a result of the molestation were sealed under Welfare and Institutions Code section 781. (*Id.* at p. 1264.) Keith's mother refused to answer certain discovery questions about Keith molesting Chrystal. (*Id.* at pp. 1264–1265.) *Parmett* concluded that Keith's mother was required to "respond to questions and to document requests on the basis of her knowledge of historic events acquired outside of the juvenile proceedings, but that she [could] not reveal events which [were] part of the sealed juvenile proceedings nor documents generated on account of those proceedings." (*Id.* at p. 1270.) Knowledge which she "acquired solely from such proceedings" was protected by the statute. (*Ibid.*)

Here, the questions did not require plaintiff to provide the petition or any other pleadings or records utilized in the sealed juvenile proceedings. Indeed, the OIG acknowledged plaintiff was excused from providing information about the sealed juvenile proceedings. Plaintiff cites no authority to show his knowledge of CDCR employees, inmates, and wards was protected on the ground that it relates to the sealed juvenile court proceedings. Rather, *Parmett* indicates that knowledge gained independently from the proceedings that occur in juvenile court falls outside the protection of Welfare and Institutions Code section 781. While

11

"the *proceedings in the case* shall be deemed to never have occurred" (Welf. & Inst. Code, § 781, italics added), not all life events that touch upon or occurred after the court proceedings are erased.

Plaintiff does not show that Welfare and Institutions Code section 827, which protects non-sealed juvenile case files, precludes the OIG from asking plaintiff about his knowledge of CDCR employees, inmates, and wards either. Section 827 expressly protects records, including electronically stored information, filed or made available in a juvenile court proceeding. Plaintiff's personal knowledge of CDCR employees, inmates, or wards acquired separately from a record in a juvenile court proceeding is not protected. Like Welfare and Institutions Code sections 781, the language of section 827 does not permit people to deny all events that can be said to relate to, but occur outside of, a juvenile proceeding. Thus, the OIG did not unlawfully seek information concerning a juvenile court proceeding or juvenile case file.

## D. The OIG is Exempt from Government Code Section 12952 and Labor Code Section 432.7

Plaintiff argues that the questions on the personal history statement form regarding his knowledge of CDCR employees, inmates, and wards, and the OIG's reliance on news articles discussing his adjudication, constituted an improper use of a juvenile adjudication as a factor in determining employment eligibility in violation of Labor Code section 432.7 and Government Code section 12952. The OIG contends it is exempt from these statutes. We agree with the OIG.

12

Labor Code section 432.7, subdivision (a)(2) states: "An employer, whether a public agency or private individual or corporation, shall not ask an applicant for employment to disclose, through any written form or verbally, information concerning or related to an arrest, detention, processing, diversion, supervision, adjudication, or court disposition that occurred while the person was subject to the process and jurisdiction of the juvenile court. An employer also shall not seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including hiring, promotion, termination, or any apprenticeship training program or any other training program leading to employment, any record concerning or related to an arrest, detention, processing, diversion, supervision, adjudication, or court disposition that occurred while a person was subject to the process and jurisdiction of the juvenile court." "Persons seeking employment or persons already employed as peace officers, or persons seeking employment in positions in the Department of Justice or other criminal justice agencies as defined in Section 13101 of the Penal Code are not covered by this section." (Lab. Code, § 432.7, subd. (e)(1).) Penal Code section 13101 defines a criminal justice agency as "those agencies at all levels of government which perform as their principal functions, activities which either: [¶] (a) Relate to the apprehension, prosecution, adjudication, incarceration, or correction of criminal offenders; or [¶] (b) Relate to the collection, storage, dissemination or usage of criminal offender record information."

Government Code section 12952, subdivision (a) provides that it is unlawful for an employer with five or more employees, while conducting a conviction history background check in

13

connection with an application for employment, to "consider, distribute, or disseminate information" about "[c]onvictions that have been sealed, dismissed, expunged, or statutorily eradicated pursuant to law, or any conviction for which the convicted person has received a full pardon or has been issued a certificate of rehabilitation." (Gov. Code, § 12952, subd. (a)(3)(C).) The term "conviction" does not include any adjudication by a juvenile court or other court order or action taken with respect to a person who is under the process and jurisdiction of the juvenile court. (Gov. Code, section 12952, subd. (f)(1); Lab. Code, § 432.7, subd. (a)(3)(B).) This "section does not apply" "[t]o a position with a criminal justice agency, as defined in Section 13101 of the Penal Code." (Gov. Code, § 12952, subd. (d)(2).)

The OIG oversees the CDCR (Pen. Code, § 6125 et seq.), which is tasked with "the supervision, management and control of the state prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein." (*Id.* at § 5054.) The OIG is "responsible for contemporaneous oversight of internal affairs investigations and the disciplinary process of the [CDCR]" (*Id.* at § 6126, subd. (a)), and it has authority to perform audits and reviews of CDCR's policies, practices, and procedures. (*Id.* at § 6126, subd. (b).) The OIG "shall, during the course of an audit or review, identify areas of full and partial compliance, or noncompliance, with [CDCR] policies and procedures, specify deficiencies in the completion and documentation of processes, and recommend corrective actions, including, but not limited to, additional training, additional policies, or changes in policy, as well as any other findings or recommendations that the [OIG] deems appropriate." (*Id.* at § 6126, subd. (d).)

14

The OIG must also "provide contemporaneous oversight of grievances that fall within the department's process for reviewing and investigating inmate allegations of staff misconduct and other specialty grievances, examining compliance with regulations, department policy, and best practices." (Pen. Code, § 6126, subd. (h).) Additionally, the OIG can conduct investigations into complaints involving sexual misconduct (*Id.* at §§ 6133, subd. (a)(7)(A)(i), 2641, subd. (e)). It may also perform "supplemental investigative measures" when the CDCR is not performing an adequate investigation, including "interviewing subjects and witnesses, reviewing and gathering records, and collecting evidence." (*Id.* at § 6133, subd. (a)(7)(A)(ii).) The OIG's statutory responsibilities thus require it to oversee CDCR's management, control, and supervision of incarcerated persons, ensuring it is done lawfully. The OIG's principal functions thus "[r]elate to the . . . incarceration[ ] or correction of criminal offenders." (Pen. Code, § 13101, subd. (a).)

Plaintiff argues that the OIG is not a criminal justice agency as defined by Penal Code section 13101 because its principal function is not correction. Plaintiff contends an agency's core purpose must "directly involve the affirmative acts of imprisonment, parole, and probation of individuals who have been convicted of a crime." (Underlining omitted.) However, section 13101 does not require an agency to engage directly in such acts. The statute requires only that an agency's principal functions "[r]*elate to*" the incarceration or correction of criminal offenders. (Pen. Code, § 13101, subd. (a), italics added.) "[T]he term 'related to' generally is interpreted broadly by courts." (*Chawanakee Unified School Dist. v. County of Madera* (2011) 196 Cal.App.4th 1016, 1028; see *Morales v. Trans World Airlines,*

15

*Inc.* (1992) 504 U.S. 374, 383 ["The ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with'"].) The OIG meets the express requirements of section 13101 because its principal functions relate to incarceration or correction. (Pen. Code, § 13101, subd. (a).)

Our reading of Labor Code section 432.7 and Government Code section 12952 does not lead to absurd consequences that require us to look beyond the plain language of the statutes. The OIG persuasively argues that it needs the information requested from applicants about their knowledge of employees, inmates, and wards of CDCR to analyze whether they can neutrally assess CDCR staff performance, policies, and practices. It would be reasonable for the Legislature to intend to allow the OIG to assess whether applicants could perform their jobs effectively.

Plaintiff argues that even if the OIG is a criminal justice agency, only peace officers seeking employment, those employed as peace officers, and "specified non-sworn personnel of a qualifying criminal justice agency" are excluded from the protection of Labor Code section 432.7. He implies that "specified non-sworn personnel" include those who handle evidence, for example, but not an attorney like him. However, plaintiff disregards the plain language of the statute.[5] It does not restrict

---

[5] Plaintiff overlooks the plain language of the statutes at issue in making other arguments as well. Plaintiff points to the policy favoring the confidentiality of juvenile records and some language in the legislative history of Labor Code section 432.7, and argues "[i]t is reasonable to infer" that persons applying to work at criminal justice agencies do not need to disclose information relating to sealed juvenile adjudications. Plaintiff argues "[f]or the same reasons . . . using

16

the exclusion to persons seeking particular positions within criminal justice agencies. It states, without limitation, "[P]ersons seeking employment in positions in the Department of Justice or other criminal justice agencies as defined in Section 13101 of the Penal Code are not covered by this section." (Lab. Code, § 432.7, subd. (e)(1).)

Although it is not necessary to consider, legislative history is consistent with our reading. As enacted in 1974, Labor Code section 432.7 exempted "persons seeking employment as peace officers." (Stats. 1974, ch. 328, § 1, p. 650.) Since then, section 432.7 has been repealed and replaced to make the exclusion broader, culminating in the current version generally excluding persons seeking employment in criminal justice agencies from its protection.

We conclude the OIG is exempt from Labor Code section 432.7 and Government Code section 12952.

## E. Plaintiff Does Not Show the OIG's Questions Violated His Constitutional Right to Privacy

Plaintiff also argues the OIG's decision was an abuse of discretion because it unlawfully infringed upon his right to privacy under the California Constitution. We disagree.

A plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill v. National Collegiate Athletic*

---

information relating to a juvenile adjudication is prohibited under Government Code section 12952." We reject these arguments as unsupported by the text of these statutes.

17

*Assn.* (1994) 7 Cal.4th 1, 39–40.) "A defendant may prevail in a state constitutional privacy case by negating any of the three elements . . . or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." (*Id.* at p. 40.)

Plaintiff's contention that the OIG violated his right to privacy is premised on the claim that he had statutory rights not to answer the questions in the personal history statement form. As discussed above, plaintiff has not shown that he had such rights under Welfare and Institutions Code section 781 or 827, Government Code section 12952, or Labor Code section 432.7. Further, plaintiff does not challenge the OIG's assertion that it had a legitimate and compelling interest—analyzing whether an applicant could provide neutral assessments of CDCR staff performance, policies, and practices—in asking whether an applicant has knowledge of CDCR employees, inmates, and wards. Therefore, plaintiff does not demonstrate that the OIG abused its discretion.

18

## DISPOSITION

The judgment is affirmed.  The OIG is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.

We concur:


ZUKIN, P. J.


TAMZARIAN, J.

19